**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HALEY BERRYMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>READING INTERNATIONAL, INC.,<br><br>Defendant. | Case No.: 1:24-cv-00750-PAE |

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT READING INTERNATIONAL, INC.'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, STRIKE CLASS ALLEGATIONS


**GREENBERG TRAURIG, LLP**
One Vanderbilt Avenue
New York, New York 10017
Tel. (212) 801-9200
*Attorneys for Defendant*
*Reading International, Inc.*

# TABLE OF CONTENTS

**Pages**


I. INTRODUCTION .......... 1

II. RELEVANT ALLEGATIONS .......... 3

A. Plaintiff's VPPA Allegations .......... 3
B. Plaintiff's NY ACAL Allegations .......... 5

III. LEGAL STANDARD .......... 6

A. Motion to Dismiss .......... 6
B. Motion to Strike .......... 7

IV. ARGUMENT .......... 8

A. Plaintiff's VPPA Claim Should be Dismissed for Failure to State a Claim .......... 8
B. Plaintiff's NY ACAL Claim Should be Dismissed .......... 10

1. Without federal subject matter jurisdiction over the VPPA claim, the state law claim must be dismissed. .......... 10
2. Plaintiff's NY ACAL claim fails to state a claim. .......... 10
3. Plaintiff lacks standing to allege a violation of the NY ACAL. .......... 11
4. Plaintiff's claim is barred by the voluntary payment doctrine. .......... 14

C. In the Alternative, Plaintiff's Proposed VPPA Movie Screening and Newsletter Classes Should be Dismissed or Stricken .......... 15

1. The VPPA Movie Screening Class. .......... 17
2. The VPPA Newsletter Class. .......... 18

V. CONCLUSION .......... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....6

*B & R Supermarket, Inc. v. Mastercard Int'l Inc.*,
No. 17-CV-02738 (MKB), 2018 WL 1335355 (E.D.N.Y. Mar. 11, 2018)....16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....6, 7

*Buntin v. City of New York*,
395 F. Supp. 2d 104 (S.D.N.Y. 2005)....10

*Burley v. City of N.Y.*,
No. 03 Civ. 735 (WHP), 2005 WL 668789 (S.D.N.Y. Mar. 23, 2005)....17

*Calibuso v. Bank of Am. Corp.*,
893 F. Supp. 2d 374 (E.D.N.Y. 2012)....7

*Carter v. Scripps Networks, LLC*,
670 F. Supp. 3d 90 (S.D.N.Y. 2023)....18

*Chen-Oster v. Goldman, Sachs & Co.*,
877 F. Supp. 2d 113 (S.D.N.Y. 2012)....7

*Cruper-Weinmann v. Paris Baguette Am., Inc.*,
235 F. Supp. 3d 570 (S.D.N.Y. 2017)....11

*Dillon v. U-A Columbia Cablevision of Westchester*,
292 A.D.2d 25 (2d Dep't 2002)....14, 20

*Ellis v. Cartoon Network, Inc.*,
No. 1:14-CV-484-TWT, 2014 WL 5023535 (N.D. Ga. Oct. 8, 2014)....9

*Fero v. Excellus Health Plan, Inc.*,
502 F. Supp. 3d 724 (W.D.N.Y. 2020)....12

*Garza v. Alamo Intermediate II Holdings, LLC*,
No. 23-cv-05849-VC, 2024 WL 1171737 (N.D. Cal. Mar. 19, 2024)....1, 8, 17

*Gimbel Bros., Inc. v. Brook Shopping Ctrs., Inc.*,
118 A.D.2d 532 (2d Dep't 1986)....14

*Harty v. West Point Realty, Inc.*,
28 F. 4th 435 (2d Cir. 2022)....6

*In re Hulu Privacy Litigation*,
No. C 11-03764 LB, 2012 WL 3282960 (N.D. Cal. Aug. 10 2012)....9

*In re Hulu Privacy Litigation*,
No. C 11-03764 LB, 2014 WL 2758598 (N.D. Cal. Jun. 17, 2014).......................................16

*In re Initial Public Offering Securities Litig.*,
260 F.R.D. 81 (S.D.N.Y. 2009) ..........................................................................................12

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)..............................................................................................................6

*Maddox v. Bank of New York Mellon Trust Co., N.A.*,
19 F.4th 58 (2d Cir. 2021) ..................................................................................................13

*Mollett v. Netflix, Inc.*,
795 F.3d 1062 (9th Cir. 2015) ..............................................................................................7

*Morales v. Copy Right, Inc.*,
28 A.D.3d 440 (2d Dep't 2006) ..........................................................................................20

*Ngo v. Ngo*,
2017 N.Y. Slip. Op. 32739 (Sup. Ct. N.Y. Cty. 2017) .........................................................12

*PFT of Am., Inc. v. Tradewell, Inc.*,
No. 98 Civ. 6413, 1999 WL 179358 (S.D.N.Y. Mar. 31, 1999) ............................................7

*Richmond Boro Gun Club v. City of N.Y.*,
896 F. Supp. 276 (E.D.N.Y. 1995) ......................................................................................10

*Salazar v. Nat'l Basketball Ass'n*,
No. 1:22-cv-07935 (JLR), 2023 WL 5016968 (S.D.N.Y. Aug. 7, 2023) ...............................18

*Shelton v. Ciox Health, LLC*,
No. 1:17-CV-00808 (ENV) (LB), 2018 WL 4211447 (E.D.N.Y. July 16, 2018) ...................................................................................................................................14

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)..............................................................................................................6

*Tandon v. Captain's Cove Marina of Bridgeport, Inc.*,
752 F.3d 239 (2d Cir. 2014)..................................................................................................6

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)........................................................................................................6, 13

*Weiner v. Snapple Beverage Corp.*,
No. 07-CV-8741, 2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010).............................................16

*Wurtz v. Rawlings Co., LLC*,
NO. 1-CV-1182- JMA-AKT, 2016 WL 7174674 (E.D.N.Y. Nov. 17, 2016).........................14

**Statutes**

18 U.S.C. § 2710.............................................................1, 2, 3, 4, 7, 8, 9, 10, 15, 16, 17, 18

18 U.S.C. § 2710(a)(1).....................................................................................................1, 8

18 U.S.C. § 2710(a)(4).....................................................................................................1, 8

28 U.S.C. § 1332(d) ....................................................................................................................2
NY Arts & Cult Aff L § 25.07 ........................................................................................................2
NY Arts & Cult Aff L § 25.07(4) ..........................................................................5, 10, 11, 12
NY Arts & Cult Aff L § 25.29(1)(a)..............................................................................................13
NY Arts & Cult Aff L ...............................................................2, 5, 10, 11, 13, 15, 18, 19

**Other Authorities**

Fed. R. Civ. P. 12(f) .......................................................................................................................7
Fed. R. Civ. P. § 12(b)(1)..........................................................................................................5, 6
Fed. R. Civ. P. § 12(b)(6)................................................................................................................6

Defendant Reading International, Inc. ("Defendant" or "Reading"), through undersigned counsel, moves to dismiss Plaintiff Haley Berryman's ("Plaintiff") class action complaint (the "Complaint") for failure to state a claim and for lack of subject matter jurisdiction, or, in the alternative, to strike Plaintiff's class allegations. Defendant's motion is supported by the following memorandum of points and authorities.

## I. INTRODUCTION

Plaintiff alleges that Reading disclosed personally identifiable information ("PII") to Facebook by utilizing the Facebook Tracking Pixel[1] to compel Plaintiff's web browser to transfer Plaintiff's PII, like her Facebook ID, event data, and the titles of the videos she viewed. Plaintiff's action fails for multiple reasons.

First, Plaintiff's Video Privacy Protection Act ("VPPA") claim should be dismissed because it fails to state a claim upon which relief can be granted. As a threshold matter, the VPPA's prohibitions apply only to "video tape service provider[s]," which Reading is not. Reading is alleged simply to operate movie theaters and to provide a website through which movie tickets are sold. Reading is not alleged to engage in, and does not engage in, the business of the "rental, sale, or delivery of prerecorded video cassette tapes." *See* 18 U.S.C. § 2710(a)(4). Nor is Plaintiff a "consumer" under the statute because she does not "rent, purchase, or subscribe" to any "goods or services" from a video tape service provider. *See* 18 U.S.C. § 2710(a)(1). All that Plaintiff has purported to "purchase" is a movie ticket—not a cassette tape or similar audio-visual material. To that point, the Northern District of California's recent decision in *Garza v. Alamo Intermediate II Holdings, LLC* is illustrative. There, the court expressly rejected plaintiff's attempt to hold a movie

---

[1] The Facebook Tracking Pixel is a common online analytics tool embedded into a website's coding that allows operators to measure and optimize audiences for advertising or marketing campaigns.

theater liable under the VPPA. No. 23-cv-05849-VC, 2024 WL 1171737, at *1 (N.D. Cal. Mar. 19, 2024) ("The Video Privacy Protection Act claim is dismissed because a movie theater operator like Alamo is not a 'video tape service provider' under the statute." (emphasis added)). The Court should reach the same result here.

Second, Plaintiff's New York Arts and Cultural Affairs Law ("NY ACAL") claim should be dismissed following dismissal of the VPPA claim for lack of federal subject matter jurisdiction.[2] But even if it could be considered, and it cannot, Plaintiff's claim fails to state a claim for relief because Plaintiff's allegations confirm the service charge is displayed before any "seat" is selected, and moreover, Plaintiff lacks standing to pursue the claim because she pleads that she was a long-time movie ticket purchaser from Reading and thus could not have been "tricked" as she claims on December 2, 2023 into purchasing a ticket without previously knowing that such a service charge would be imposed. *See* Compl. ¶ 72 (stating that since creating her Facebook account in October 2013 "Plaintiff Berryman frequented Defendant's Website to . . . purchase movie tickets"). She is accordingly not the type of person meant to be protected by the statute—i.e., an unknowing customer. Further still, Plaintiff's claim is barred by the voluntary payment doctrine, as explained herein.

Finally, and as an alternative to the extent the Complaint is not dismissed in its entirety, Plaintiff's VPPA Movie Screening and VPPA Newsletter Classes must be dismissed or stricken because the classes are facially overbroad and not ascertainable, and even if they were, Plaintiff cannot maintain a claim for relief for movie ticket purchases under the VPPA or for newsletter

[2] Plaintiff alleges that the Court separately has jurisdiction pursuant to 28 U.S.C. § 1332(d), Compl. ¶ 12, but pleads only in conclusory and speculative fashion that a proposed class action would exceed $5,000,000.00. Plaintiff's allegations are insufficient as a matter of law to plead the Court's subject matter jurisdiction.

subscriptions. Relatedly, Plaintiff's NY ACAL classes are facially overbroad and not ascertainable, and similarly may not be pursued as a matter of law.

For these and the following reasons, Reading respectfully requests the Court dismiss Plaintiff's claims, or in the alternative strike the class allegations.

## II. RELEVANT ALLEGATIONS

Reading is alleged to own and operate Angelika Film Centers—movie theaters showing independent and international films (the "Angelika"). Compl. ¶ 2. Reading is also alleged to operate AngelikaFilmCenter.com, which enables cinephiles to purchase tickets to shows at the Angelika, and also peripherally learn about films and view movie trailers. *Id.*[3]; *see also id.* ¶ 29 (alleging that Reading "monetizes the cinema experience by selling tickets on its Website, AngelikaFilmCenter.com").

### A. PLAINTIFF'S VPPA ALLEGATIONS

Plaintiff's Complaint conflates consistently the sale of movie tickets, which are not actionable under the VPPA for the reasons stated herein, and the peripherally offered move trailers as the basis for bringing her VPPA claim. Tellingly, Plaintiff does not allege that any subscription is required to view the movie trailers or that individuals who view such movie trailers are "consumers" under the VPPA.

---

[3] Reading, through an affiliated entity, also has an online video content service, AngelikaAnywhere.com, which Plaintiff incorrectly cites to for support, Compl. ¶ 20 n.1, but any claim for streaming through AngelikaAnywhere.com would be subject to arbitration and require dismissal of all class claims. *See* Terms & Conditions, available at https://www.angelikaanywhere.com/page/terms-and-conditions/ (arbitration clause and class action waiver). Indeed, the only service providing prerecorded video content that Reading is alleged to offer is through AngelikaAnywhere.com, not through AngelikaFilmCenter.com. *See* AngelikaAnywhere.com (allowing individuals to buy or rent films online).

Regardless, Plaintiff alleges that AngelikaFilmCenter.com utilizes Facebook's Tracking Pixel, which is a piece of code that Plaintiff alleges tracks individuals and the types of "actions" (or "events") said individuals take. *Id.* ¶ 25. For each "action," Plaintiff alleges that the Facebook Tracking Pixel collects the website's metadata and the pages an individual specifically visits. *Id.* ¶ 26. As to AngelikaFilmCenter.com specifically, Plaintiff alleges that the Facebook Tracking Pixel on the Website transmits two distinct components to Facebook—the Uniform Resource Locator (or "URL") and whether the specific website the individual visits contains a link to a video. *Id.* ¶ 31.

Plaintiff alleges further that the title for the movie is contained in the URL and that when a person selects a particular date and showtime for the movie depicted on the webpage containing the movie trailer, and completes the checkout process to purchase said ticket, a new purchase event is transmitted to Facebook. *Id.* ¶¶ 35-36. Plaintiff does not allege that any "video viewed" event is transferred or recorded. Indeed, Plaintiff alleges only that the purchase event—for the ticket, not the viewing of any video—"discloses to Facebook the fact that a consumer purchased a movie ticket, the currency used to purchase the ticket, and the amount spent on the ticket." *Id.* ¶¶ 37, 76. There is no allegation that the title or any other identifying information is communicated about the film to which the ticket pertains.

Plaintiff further alleges that when an event occurs while the individual is logged into Facebook, AngelikaFilmCenter.com sends cookie information to Facebook that Facebook matches with an encrypted Facebook ID specific to the individual. *Id.* ¶¶ 39-41. Thus, according to Plaintiff, Facebook is able to pair the cookie information with Facebook's ID to determine the viewing history of individuals. *Id.* 48.

Plaintiff also alleges that in addition to purchasing movie tickets, individual users can either create accounts on the AngelikaFilmCenter.com Website or sign up for its newsletter. *Id.* ¶ 52.

Plaintiff alleges on a conclusory basis that through the collection of metadata and with knowledge of Facebook's ID, "Defendant knowingly discloses information sufficiently permitting an ordinary person to identify a specific individual's video viewing behavior." *Id.* ¶¶ 58-61. But the specific facts Plaintiff alleges do not identify any of the information transmitted by Reading as to the identity of any specific film viewed or not viewed by Plaintiff.

### B. Plaintiff's NY ACAL Allegations

Plaintiff alleges that, under New York's Arts & Cultural Affairs Law § 25.07(4), every entertainment operator must disclose the total cost of a ticket, inclusive of all ancillary fees, in a clear and conspicuous manner, which must be provided "prior to" the ticket being selected for purchase. *Id.* ¶ 63. Plaintiff further alleges that the "ticket purchasing process begins once a consumer visits a ticket marketplace and first sees a list of seat prices." *Id.* ¶ 64.

Plaintiff alleges that, at AngelikaFilmCenter.com, "the purchase process begins" "[a]fter a user selects a showtime" and "he is prompted to select the number and type of tickets." *Id.* ¶ 67. But, according to Plaintiff, "[a]fter a consumer selects the type and number of tickets she wishes to purchase of the movie she selected, at the theatre she selected, and for the showtime she selected, she is brought to a screen requiring her to select her seats," which for the first time displays "Defendant's $2.19 'service charge' per ticket." *Id.* ¶ 68.

Plaintiff alleges that since creating her Facebook account on October 7, 2013, she "frequented Defendant's Website to, among other things, watch trailers and purchase movie tickets." *Id.* ¶ 72. As Plaintiff notes, the NY ACAL section at issue became effective only on August 29, 2022. *Id.* ¶ 63. Plaintiff alleges that, thereafter, on December 2, 2023, she purchased

tickets to a movie screening at Defendant's theater but "was tricked into paying Defendant's 'service charge' even though this charge was not disclosed to her prior to her ticket selection." *Id.* ¶ 74.

## III. LEGAL STANDARD

### A. MOTION TO DISMISS

When considering a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, "the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). That notwithstanding, "the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* Dismissal under Rule 12(b)(1) is appropriate where a plaintiff lacks standing. Article III confines the federal judicial power to the resolution of "Cases" and "Controversies." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 422-23 (2021). To assure that judges avoid rendering impermissible advisory opinions, parties seeking to invoke federal judicial power must first establish their standing to do so. To establish standing, a plaintiff must show that (i) he suffered an injury in fact that is concrete, particularized, and actual or imminent, (ii) the injury was likely caused by the defendant, and (iii) the injury would likely be redressed by judicial relief. *Id.* At the pleading stage, the plaintiff must "clearly . . . allege facts demonstrating each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). An injury in fact must be 'concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Notably, "a statutory violation alone. . . is not sufficient for Article III standing." *Harty v. West Point Realty, Inc.*, 28 F. 4th 435, at 444 (2d Cir. 2022) (citing *TransUnion*, 594 U.S. at 426).

To survive a motion to dismiss brought under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although a court must accept all factual allegations in the complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Ultimately, if the plaintiff's allegations "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.* at 570.

### B. MOTION TO STRIKE

A court "may order stricken from any pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The court may grant the motion to strike class allegations if the "class allegations fail as a matter of law, or, in other words, no discoverable facts exist that would allow the certification of the alleged class." *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117-19 (S.D.N.Y. 2012); *see also Calibuso v. Bank of Am. Corp.*, 893 F. Supp. 2d 374, 388 (E.D.N.Y. 2012) ("[T]he court finds that . . . it would be futile to allow [the] plaintiffs to conduct discovery because plaintiff's theory for class certification is simply foreclosed."); *PFT of Am., Inc. v. Tradewell, Inc.*, No. 98 Civ. 6413, 1999 WL 179358, at *1 (S.D.N.Y. Mar. 31, 1999) (striking class claims where the complaint contained "no facts from which it [could] be determined that there is any basis other than speculation as to whether there are other members of the class").

## IV. ARGUMENT

### A. Plaintiff's VPPA Claim Should be Dismissed for Failure to State a Claim

To bring a VPPA claim, a plaintiff must plausibly allege that: "(1) a defendant is a 'video tape service provider,' (2) the defendant disclosed personally identifiable information concerning any customer' to 'any person,' (3) the disclosure was made knowingly, and (4) the disclosure was not authorized." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015). A consumer is a "renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). The terms "goods or services" and "subscriber" are not defined, and must be given their plain dictionary meaning. The VPPA defines a "video tape service provider" as "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4).

According to Plaintiff's own allegations, however, AngelikaFilmCenter.com does not transmit video content. Instead, the website merely transmits the URL an individual visited to purchase a movie theater ticket. Indeed, integral to running a movie theater is selling tickets. *See* Compl. ¶¶ 28-29, 36. Accordingly, this case is no different than *Garza*, in which the District Court for the Northern District of California granted defendant's motion to dismiss on the basis that a movie theater operator "does not provide 'video recording sales or rental services,'" does not "rent or sell movies to moviegoers," and does not "deliver" movies to people who visit its theaters." 2024 WL 1171737 at *1. There, the court rejected each of plaintiff's attempts in that case to hold the VPPA applicable to "movie theaters." *Id.* (stating that plaintiff's purported definitions do "not cover movie theaters" and would require an unsupported "stretch" of the statutory language).

Importantly, the court dismissed the complaint in its entirety ***without*** leave to amend "because the statutes simply do not cover what movie theaters typically do and no amendment could fix that problem. *Id.* (emphasis added). Moreover, in footnote 1, the court (based on the party's representation) noted a telling distinction between "a streaming service, which could involve the rental, sale, or delivery of movies," *id.* at n.1, and the operation of a movie theater. Again, the VPPA simply does not apply to movie theaters selling tickets.

Nor has Plaintiff established through her pleadings that she is a "consumer" (i.e., a "renter, purchaser, or subscriber") as required by the VPPA. To the extent Plaintiff contends that she was a "renter" or "purchaser," her only alleged "purchase" was of a movie ticket—not cassette tapes or similar audio-visual materials. To the extent Plaintiff attempts to proclaim herself a "subscriber," she does not allege that she is a subscriber ***of audio-visual materials***. Indeed, by Plaintiff's own allegations, an "account" is free of charge and includes only the following: "weekly showtimes, film & event info, special offers & discounts, and free screening invitations." Compl. ¶ 53. Notably absent from these "account" benefits is the "rental, sale, or delivery" of "video tape cassettes or similar audio visual materials."

Two cases illustrating Plaintiff's failure here and distinguishing AngelikaFilmCenter.com from a video service provider make the point clearly. In *In re Hulu Privacy Litigation*, the court found plaintiffs to be subscribers where they "signed up for a Hulu account [to watch videos], became registered users, received a Hulu ID, established Hulu profiles, ***and used Hulu's video streaming services***." No. C 11003764 LB, 2012 WL 3282960 (N.D. Cal. Aug. 10, 2012) (emphasis added). And in *Ellis v. Cartoon Network, Inc.*, the court found that plaintiff's allegations that he "downloaded the [Cartoon Network] App and used it to watch video clips" necessarily tied the plaintiff (and his device) to defendant to make him a subscriber of audio visual materials. No.

1:14-CV-484-TWT, 2014 WL 5023535 (N.D. Ga. Oct. 8, 2014). These cases demonstrate the only application of the VPPA is to cover a user's subscription ***for audio visual materials*** (i.e., online streaming services). To Reading's knowledge, the VPPA has never been stretched to cover movie theaters selling tickets in any jurisdiction.

Stated simply, Plaintiff has not met her burden to sufficiently allege that Reading is a "video tape service provider" or that Plaintiff is a "consumer" vis-à-vis Reading' (i.e., a renter, purchaser, or subscriber of audio-visual materials) under the VPPA. For these reasons, Reading respectfully requests the Court dismiss Plaintiff's VPPA claim.

### B. PLAINTIFF'S NY ACAL CLAIM SHOULD BE DISMISSED

Plaintiff's NY ACAL claim fails for four straightforward reasons.

#### *1. Without federal subject matter jurisdiction over the VPPA claim, the state law claim must be dismissed.*

First, the dismissal of the VPPA claim removes the only alleged basis for this Court's jurisdiction. *See* Compl. ¶ 10 (original jurisdiction over VPPA claim); *id.* ¶ 11 (supplemental jurisdiction over NY ACAL claim). Accordingly, the NY ACAL claim should be dismissed. *See, e.g.*, *Buntin v. City of New York*, 395 F. Supp. 2d 104 (S.D.N.Y. 2005) ("The federal claim is dismissed on the merits and the state claim for lack of subject matter jurisdiction."); *Richmond Boro Gun Club v. City of N.Y.*, 896 F. Supp. 276 (E.D.N.Y. 1995) ("Plaintiff's state claim is dismissed for lack of independent federal jurisdiction.").

#### *2. Plaintiff's NY ACAL claim fails to state a claim.*

Second, Plaintiff's NY ACAL allegations fail to state a claim as a matter of law because the Complaint shows that the AngelikaFilmCenter.com website complies with NY ACAL § 25.07(4)'s requirement to display the service fee "prior to the ticket being selected for purchase."

*See* NY ACAL § 25.07(4). Plaintiff contends that the ticket purchasing process begins "once a consumer visits a ticket marketplace and first sees a list of seat prices," Compl. ¶ 64, and that the process on the AngelikaFilmCenter.com website begins after a user selects a showtime, *id.* ¶ 67, but that thereafter, on the screen requiring a customer to select their seats, the AngelikaFilmCenter.com website displays for the first time a $2.19 service charge, *id.* ¶ 68. Plaintiff's claim fails as a matter of law because the very screen that Plaintiff alleges displays the service charge—the screen at which the customer selects her seats—***is*** the screen by which the NY ACAL law is triggered—i.e., "once a consumer visits a ticket marketplace and first sees a list of ***seat*** prices." *See id*. ¶ 64 (citing Exhibit A, N.Y. Dep't of State, Div. Licens. Servs., *Request for Additional Guidance – New York State Senate Bill S.9461* (emphasis added)). Thus, the service fee is displayed before the ticket is "***selected*** for purchase," § 25.07(4) (emphasis added), and ***far before the "Order Confirmation" screen and before any payment is requested***. *See* Compl. ¶ 69; *see also id*. Exhibit A, N.Y. Dep't of State, Div. Licens. Servs., *Request for Additional Guidance – New York State Senate Bill S.9461* (noting that only "[w]here an online purchaser ***is nearing the end of the purchasing process, after selecting the tickets***, the final total price should . . . include the fully disclosed ticket price" (emphasis added)). Accordingly, Plaintiff has not stated a claim for relief for an alleged violation of the NY ACAL, and the claim must be dismissed.

*3. Plaintiff lacks standing to allege a violation of the NY ACAL.*

Third, Plaintiff's NY ACAL claim should also be dismissed for lack of standing because the Complaint fails to assert factual allegations establishing that Plaintiff suffered an injury-in-fact. Even if placement of the service charge on the seat selection screen somehow violated the NY ACAL, which Reading disputes, (i) Plaintiff could not have been "tricked" or surprised into paying the service charge as a self-purported long-time visitor of the AngelikaFilmCenter.com

website and purchaser of movie tickets, *see* Compl. ¶ 72 (alleging that she had been purchasing tickets on the AngelikaFilmCenter.com website since or around October 2013); and (ii) Plaintiff states at best only a bare procedural violation without any concrete harm resulting from the timing of the disclosure of the total cost of a ticket, inclusive of fees. *See, e.g.*, *Cruper-Weinmann v. Paris Baguette Am., Inc.*, 235 F. Supp. 3d 570, 574 (S.D.N.Y. 2017) (quoting *Spokeo* and stating that a bare procedural violation does not establish an injury in fact).

To start, the notion that Plaintiff was "forced" to pay a service charge "not disclosed to Plaintiff at the beginning of the purchase process" is absurd and unreasonable. First and foremost, as stated above, she had ample time to review the service charge ***before*** selecting her seat or making any payment. And second, Section 25.07(4) is, as demonstrated by the additional guidance attached to the Complaint as Exhibit A, a "disclosure" statute concerned with preventing "unfair, deceptive, and anti-consumer practices." Exhibit A at 1. But as caselaw has consistently held with respect to such laws, "in order to have been injured by the defendant's deceptive act, a plaintiff must have been personally misled or deceived." *See Fero v. Excellus Health Plan, Inc.*, 502 F. Supp. 3d 724, 740 (W.D.N.Y. 2020). And caselaw has also consistently held that there cannot be a claim where the individual has otherwise known of the purported practice. *See, e.g.*, *Ngo v. Ngo*, 2017 N.Y. Slip. Op. 32739, ¶¶ 3-4 (Sup. Ct. N.Y. Cty. 2017) (stating that if a plaintiff had prior actual or constructive knowledge that defendants were misrepresenting facts or otherwise engaging in misleading conduct, he may not succeed on his claims); *In re Initial Public Offering Securities Litig.*, 260 F.R.D. 81 (S.D.N.Y. 2009) (stating that an individual cannot be said to have relied on a defendant's misrepresentation if he knew it was false).

Here, Plaintiff admits that she was a long-time purchaser of movie tickets from the AngelikaFilmCenter.com website and thus could not have previously been unaware of the charge

or suffered an injury in fact by disclosure of the service charge before she selected her seat or proceeded to make payment. *See* Compl. ¶ 72. Accordingly, she cannot claim to have suffered an injury fairly traceable to a purported violation of the statute, even if there was one. *See TransUnion*, 594 U.S. at 425-26 (stating an injury in law is not an injury in fact).

Moreover, the allegations show that the total cost of the tickets, inclusive of fees, was disclosed prior to Plaintiff taking affirmative steps to purchase the tickets. *See* Compl. ¶¶ 69, 74 (alleging that to complete a transaction, AngelikaFilmCenter.com website required both selection of the seat for which the ticket would issue and "input" of "payment information" ***after*** disclosure of the service fee, and that Plaintiff purchased tickets through a "checkout flow process substantially similar to that depicted in Figures 14-19" in the Complaint). Plaintiff does not allege that she was unaware of, or otherwise sought to avoid, the total cost of the tickets, inclusive of all fees, at the time she completed the transaction. Nor does Plaintiff allege that AngelikaFilmCenter.com was not permitted to charge Plaintiff a fee for purchasing online movie tickets or that the total cost of a ticket, inclusive of all fees, is illegal. *See, e.g.*, NY ACAL § 25.29(1)(a) ("nothing in this article shall be construed to prohibit a reasonable service charge by the operator agents of the operator for special services, including but not limited to, sales away from the box office, credit card sales or delivery").

Indeed, the Complaint is devoid of any sufficiently plead allegation that Plaintiff suffered a concrete injury resulting from the timing of the disclosure of the total cost of a ticket, inclusive of all fees. Plaintiff's alleged "informational injury," absent any actual "adverse effects," cannot satisfy the concrete-harm requirement required for Plaintiff to establish standing and sustain a claim. *See TransUnion*, 141 S.Ct. at 2214. Accordingly, Plaintiff failed to meet her burden to allege facts establishing an injury-in-fact and, thus, standing to proceed. *See, e.g.*, *Maddox v. Bank*

*of New York Mellon Trust Co., N.A.*, 19 F.4th 58, 62 (2d Cir. 2021) ("'No concrete harm; no standing.' This equation, which opens the Supreme Court's *TransUnion* decision leaves little room for interpretation . . .").

*4. Plaintiff's claim is barred by the voluntary payment doctrine.*

Fourth and finally, even if this Court determines that Plaintiff sufficiently alleged a concrete injury supporting standing, New York's voluntary payment doctrine precludes Plaintiff's NY ACAL claim. The voluntary payment doctrine "bars recovery of payments made with full knowledge of the facts, even if made under a mistake of law." *Wurtz v. Rawlings Co., LLC*, NO. 1-CV-1182- JMA-AKT, 2016 WL 7174674, at *5 (E.D.N.Y. Nov. 17, 2016) (quoting *Dillon v. U-A Columbia Cablevision of Westchester*, 292 A.D.2d 25, 27 (2d Dep't 2002)); *see also Shelton v. Ciox Health, LLC*, No. 1:17-CV-00808 (ENV) (LB), 2018 WL 4211447, at *2 (E.D.N.Y. July 16, 2018) (quoting *Gimbel Bros., Inc. v. Brook Shopping Ctrs., Inc.*, 118 A.D.2d 532, 535 (2d Dep't 1986)) ("New York embraces the doctrine, 'that a voluntary payment [of an improper charge] made with full knowledge of the facts cannot be recovered because it was made pursuant to a mistake of law.'"). This doctrine applies to both statutory claims and common law claims, *see Wurtz*, 2016 WL 7174674, at *6-8, and is based on the rationale that "[w]hen a party intends to resort to litigation in order to resist paying an unjust demand, that party should take its position at the time of the demand, and litigate the issue before, rather than after, payment is made." *Gimbel*, 118 A.D.2d at 535.

Here, as discussed above, Plaintiff does not, because she cannot, allege that she lacked knowledge of the existence of the fees associated with her ticket purchase from AngelikaFilmCenter.com. Indeed, Plaintiff's conclusory allegation that she was somehow "tricked" into paying the service fee is belied by allegations that demonstrate that she purchased

movie tickets through the AngelikaFilmCenter.com website before December 2, 2023, and that the total cost of the tickets, inclusive of fees, was disclosed prior to Plaintiff taking affirmative steps to purchase the tickets. *See* Compl. ¶¶ 69, 74. Accordingly, the Complaint does not sufficiently allege that Plaintiff paid the total costs, inclusive of fees, as a result of some mistake, fraud, or duress. Instead, the Complaint shows that Plaintiff ***voluntarily*** elected to pay the total cost of movie tickets, inclusive of fees, on Reading's website ***with full knowledge of the amount of such total cost***.

Simply put, Plaintiff could have avoided paying the disclosed total cost, inclusive of fees, for the movie tickets she purchased on the website by not proceeding with her purchase. Instead, the Complaint shows that Plaintiff voluntarily accepted the total cost of the movie tickets, inclusive of fees, and made payment with full knowledge of the amount being paid. Thus, because Plaintiff could (and should) have attempted to resist paying the total cost, inclusive of fees, for the movie tickets at the time such total cost was disclosed to Plaintiff, and initiated this litigation after she voluntarily chose to pay the total cost, inclusive of fees, of the movie tickets, New York's voluntary payment doctrine bars Plaintiff's NY ACAL claim, and it must be dismissed.

### C. In the Alternative, Plaintiff's Proposed VPPA Movie Screening and Newsletter Classes Should be Dismissed or Stricken

In the alternative to complete dismissal of Plaintiff's claims, Plaintiff's proposed VPPA Movie Screening and VPPA Newsletter Classes must be dismissed or stricken because they cannot be pursued as a matter of law.

Plaintiff seeks to represent, among other proposed classes, the following two proposed classes:

> **The VPPA Movie Screening Class**: all persons in the United States who have a Facebook account and who purchased tickets to a movie screening at one of Defendant's theaters from AngelikaFilmCenter.com.
>
> **The VPPA Newsletter Class**: all persons in the United States who signed up for a AngelikaFilmCenter.com newsletter and have a Facebook account and who viewed videos on Defendant's Website.

Compl. ¶ 77(a) and (c).

As an initial matter, the two proposed VPPA classes are facially overbroad and not ascertainable because any class must be limited to individuals whose PII was actually disclosed—not just persons who visited the AngelikaFilmCenter.com website or purchased a movie ticket. But this element (disclosure) is notable absent from the proposed class definitions. And even if it were included, in order to determine whether a disclosure has occurred, courts have found the inquiry "turns on whether the c_user cookie was sent to Facebook, ***which depends on a number of variables (including whether the user remained logged into Facebook, cleared cookies, or used ad-blocking software)***." *See In re Hulu Privacy Litigation*, No. C 11-03764 LB, 2014 WL 2758598, at *14-15 (N.D. Cal. Jun. 17, 2014) (emphasis added) (noting that even if far narrower class definitions could be proposed, the question remains "how does one ascertain who is in the class or subclasses," and the only answer would be through the inherently individualized and untrustworthy process of "self-reporting"); *see also B & R Supermarket, Inc. v. Mastercard Int'l Inc.*, No. 17-CV-02738 (MKB), 2018 WL 1335355, at *12, 14 (E.D.N.Y. Mar. 11, 2018) (requiring the class definition to be consistent with the alleged theory of liability and concluding that "[b]ecause the proposed class is not ascertainable, the Court denies Plaintiff's motion for class certification"); *Weiner v. Snapple Beverage Corp.*, No. 07-CV-8741, 2010 WL 3119452, at *13

(S.D.N.Y. Aug. 5, 2010) (stating that a class is not ascertainable "when identifying its members would [ ] require a mini-hearing on the merits of each case"); *Burley v. City of N.Y.*, No. 03 Civ. 735 (WHP), 2005 WL 668789, at *9 (S.D.N.Y. Mar. 23, 2005) (denying class certification because the class definition was "too vague to be clearly ascertainable").

But even if the classes were somehow appropriately defined and ascertainable—and they are not—they would still fail as a matter of law.

*1. The VPPA Movie Screening Class.*

Plaintiff seeks to represent a class consisting of all persons that purchased a ticket to a physical movie screening. But, stated simply, the VPPA does not apply to movie theaters selling tickets, for the same reasons stated above. *See Garza*, 2024 WL 1171737 at *1. Accordingly, to the extent Plaintiff seeks to hold Reading liable under the VPPA for selling movie tickets, such conduct is not covered by the VPPA and a proposed class seeking relief for such individuals is not capable of being pursued. Moreover, even if the VPPA applied to ticket sales—and it does not—the proposed class is facially overbroad because it is not limited to "subscribers" in any capacity. A "subscription" connotates an ongoing relationship, not a potentially singular purchase. *See, e.g.*, Merriam-Webster Online Dictionary (defining "subscription" to mean "an arrangement for providing, receiving, or making use of something of a continuing or periodic nature"), available at https://www.merriam-webster.com/dictionary/subscription; *see also* Merriam-Webster Online Dictionary (defining a "subscriber" as someone who "receive[s] or [has] access to something (such as a periodical or service) as part of an arrangement to receive a certain number of regular deliveries or a certain period of continuous access especially by prepayment"), available at https://www.merriam-webster.com/dictionary/subscriber. But Plaintiff's proposed class would

include any individual, whether or not a subscriber, that purchased even a single ticket to a movie screening at one of Reading's alleged theaters from AngelikaFilmCenter.com.

For these reasons, Plaintiff's proposed VPPA Movie Screening Class is facially deficient and may not be pursued.

*2. The VPPA Newsletter Class.*

As this Court recently held in *Carter v. Scripps Networks, LLC*, a plaintiff's newsletter subscription does not make them a "subscriber" under the VPPA. 670 F. Supp. 3d 90 (S.D.N.Y. 2023). In that case, "plaintiffs assert[ed] that their subscriptions to hgtv.com newsletters make them subscribers under the VPPA," but the Court rejected such a broad interpretation which was supported only by reading the definition of "consumer" in isolation. *Id.* at 98. Because newsletters concern information other than the sale, rental, or delivery of prerecorded video content, a subscriber of a newsletter is not necessarily a consumer of prerecorded video content. This conclusion is also supported by the 1988 Senate Report supporting the statute's passage, which states that the definition of PII was drafted "to make clear that simply because a business is engaged in the sale or rental of video materials or services does not mean that all of its products or services are within the scope of the bill. For example, a department store that sells video tapes would be required to extend privacy protection to only those transactions involving the purchase of video tapes and not other products." *Id.* at 99 (quoting Senate Report 100-599, at 12) (emphasis added). Subscribing to a newsletter is simply not a transaction involving the purchase of video tapes or other products. *See also Salazar v. Nat'l Basketball Ass'n*, No. 1:22-cv-07935 (JLR), 2023 WL 5016968 (S.D.N.Y. Aug. 7, 2023) (citing *Carter* favorably, dismissing VPPA claim, and holding that "the Court does not find that Plaintiff's subscription to Defendant's newsletter

rendered him a consumer of goods or services from a video tape service provider under the VPPA").

As Plaintiff's Complaint itself demonstrates, signing up for a newsletter results in receipt of "weekly showtimes, film & event info, special offers & discounts, and free screening invitations." Compl. ¶ 53. But receiving information regarding showtimes or film and events does not equate to the purchase, rental, or delivery of prerecorded video content. Indeed, a person could receive the newsletter but never purchase a ticket or view any prerecorded content. To that point, even Plaintiff recognizes that the newsletter only "help[s] Defendant solicit purchases" of tickets to movie screenings. Compl. ¶ 88. But the newsletter itself does not necessarily cause the viewing of any specific prerecorded video content. (And, for the reasons stated above, the solicitation and sale of a movie screening ticket is not covered by the VPPA.)

For these reasons, Plaintiff's proposed VPPA Newsletter Class may not be pursued.

**Plaintiff's Proposed NY ACAL Classes are Not Capable of Being Pursued**

Plaintiff seeks to certify two NY ACAL classes:

> **The ACAL Nationwide Class**: all persons in the United States who purchased electronic tickets to any film screenings in any theatre location in the State of New York from Defendant's website on or after August 29, 2022.
>
> **The ACAL New York Subclass**: all persons in the State of New York who purchased electronic tickets to any film screenings in any theatre location in the State of New York from Defendant's website on or after August 29, 2022.

Compl. ¶ 77(d)-(e).

But both classes are facially overbroad and not ascertainable because they are not limited to persons who paid the service charge without knowledge of the service charge, and any person

who purchased tickets with knowledge that the service charge was included simply cannot claim to have suffered any injury under New York law. *See, e.g.*, *Morales v. Copy Right, Inc.*, 28 A.D.3d 440, 441 (2d Dep't 2006) (affirming dismissal of class action complaint seeking damages for defendant's alleged statutory violation because "plaintiffs' voluntary payment of the [] charges, without any alleged fraud or mistake of material fact or law, bars recovery of the payments under the 'voluntary payment doctrine'"); *Dillon v. U-A Columbia Cablevision of Westchester*, 292 A.D.2d 25, 27 (2d Dep't 2003) (affirming dismissal of class action complaint challenging disclosed $5 late fee because voluntary payment doctrine "bars recovery of payments made with full knowledge of the facts, even if made under a mistake of law"). And even to first determine whether any specific customer was aware of the service charge prior to making payment would require individualized inquiry not capable of class-wide resolution.

For these reasons, Reading respectfully requests the Court strike the NY ACAL class allegations.

## V. CONCLUSION

For the reasons stated herein, Reading respectfully requests the Court dismiss the Complaint in its entirety, or, in the alternative, strike the class allegations.

DATED this 5th day of April, 2024

**GREENBERG TRAURIG, LLP**

By: */s/ Sarah E. Atlas*
Sarah E. Atlas
One Vanderbilt Avenue
New York, NY 10017
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
Email: atlass@gtlaw.com

Mark E. Ferrario, Esq.
Nevada Bar. No. 1625
(*Pro Hac Vice Forth Coming*)
Tyler Andrews, Esq.
(*Pro Hac Vice Forth Coming*)
Nevada Bar No. 9499
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002
Email: ferrariom@gtlaw.com
tyler.andrews@gtlaw.com

*Attorneys for Reading International, Inc.*