**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

HALEY BERRYMAN, individually and on behalf of all others similarly situated,

Plaintiff,

v.

READING INTERNATIONAL, INC.,

Defendant.

Case No.: 1:24-cv-00750-PAE

**DEFENDANT READING INTERNATIONAL, INC.'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS**

**GREENBERG TRAURIG, LLP**
One Vanderbilt Avenue
New York, New York 10017
Tel. (212) 801-9200
*Attorneys for Defendant*
*Reading International, Inc.*

# TABLE OF CONTENTS

**Pages**

I. NOTHING IN THE OPPOSITION RECTIFIES THE SIMPLE FACT THE VPPA DOES NOT APPLY TO READING ........ 1

II. PLAINTIFF HAS NOT PLAUSIBLY ALLEGED SHE IS A "CONSUMER" ........ 2

III. PLAINTIFF PROVIDES NO JUSTIFICATION TO DELAY STRIKING THE FACIALLY IMPERMISSIBLE CLASS ALLEGATIONS ........ 3

IV. PLAINTIFF DOES NOT ALLEGE A BASIS FOR CAFA JURISDICTION ........ 4

V. THE OPPOSITION FAILS TO REFUTE WHAT THE COMPLAINT SHOWS - ANGELIKAFILMCENTER.COM COMPLIES WITH NEW YORK'S ARTS & CULTURAL AFFAIRS LAW § 25.07(4) ........ 4

VI. BECAUSE THE SERVICE FEE WAS PROPERLY DISCLOSED, PLAINTIFF DOES NOT HAVE STANDING ........ 7

VII. THE VOLUNTARY PAYMENT DOCTRINE REQUIRES DISMISSAL OF THE COMPLAINT ........ 9

VIII. CONCLUSION ........ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Charles v. Color Factory, LLC*,
No. 24-cv-322, 2024 WL 169236 (S.D.N.Y. Apr. 19, 2024) ............................................5, 6

*Christopherson v. Cinema Entertainment Corp.*,
No. 23-cv-3614 (JWB/LIB), 2024 WL 1120925 (D. Minn. Mar. 6, 2024)..............................2

*Dougherty v. North Fork Bank*,
301 A.d.2d 491 (2d Dep't 2003)..........................................................................................10

*Fink v. Time Warner Cable*,
810 F. Supp. 2d 633 (S.D.N.Y. 2011)......................................................................................9

*Gardener v. MeTV*,
681 F. Supp. 3d 864 (N.D. Ill. 2023) .......................................................................................3

*Garza v. Alamo Intermediate II Holdings, LLC*,
No. 23-cv-05849-VC, 2024 WL 1171737 (N.D. Cal. Mar. 19, 2024) .....................................1

*Goldstein v. Fandango Media, LLC*
No. 22-80569-CIV-MARRA, 2023 WL 3025111 (S.D. Fla. Mar. 7, 2023) ............................2

*Harty v. West Point Realty, Inc.*,
28 F. 4th 435 (2d Cir. 2022) ....................................................................................................8

*Osheshke v. Silver Cinemas Acquisition Co.*,
No. 2:22-cv-09463-HDV-JCx, 2023 WL 8188464 (C.D. Cal. Oct. 31, 2023).....................1, 2

*Schwartz v. Torrenzano*,
49 Misc. 3d 943 (Sup. Ct. Suffolk Cty. 2015) ......................................................................10

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
505 B.R. 135 (S.D.N.Y. 2013)..................................................................................................8

*Young v. Metro. Learning Inst., Inc.*,
No. 22-CV-1722 (JPO), 2023 U.S. Dist. LEXIS 23206 (S.D.N.Y. Feb. 10, 2023) ..........................................................................................................................7

**Statutes**

NY Arts & Cult Aff L § 25.29 ...........................................................................................8, 9

**Other Authorities**

Sen. Rep. No. 100-599 .............................................................................................................1

## I. NOTHING IN THE OPPOSITION RECTIFIES THE SIMPLE FACT THE VPPA DOES NOT APPLY TO READING

Plaintiff's Complaint rests on the proposition that the VPPA should apply to movie theaters that sell tickets online, just because when a person goes to the theater, they ***then*** view the movie on the screen. But as the District Court for the Northern District of California recently held, that exact type of conduct does ***not*** subject a movie theater to the provisions of the VPPA. *See Garza v. Alamo Intermediate II Holdings, LLC*, No. 23-cv-05849-VC, 2024 WL 1171737 (N.D. Cal. Mar. 19, 2024); *see also Osheske v. Silver Cinemas Acquisition Co.*, No. 2:22-cv-09463-HDV-JCx, 2023 WL 8188464, at *1 (C.D. Cal. Oct. 31, 2023) (refusing to find a movie theater subject to the VPPA and stating that to "expand the VPPA to cover the ***public*** act of attending a movie theater is a bridge too far and is patently inconsistent with both the plain language and legislative history of the VPPA itself"). Plaintiff attempts to distinguish *Garza* by stating that, in that case, the court "acknowledged that the movie theater could be a VTSP [i.e., a video tape service provider] ***to the extent it 'used to run a streaming service***, which could involve the rental, sale, or delivery of movies.'" Opp. at 5 (emphasis added). The problem is that Plaintiff has not alleged that she *ever* used Reading's video streaming service, which coincidentally is *only* provided through AngelikaAnywhere.com—an entirely different website and service. *See* ECF No. 10 at 3 n.3.

Plaintiff separately refers to snippets from cases and secondary sources regarding a "video's format" and "open-reel movies," and argues that movie theaters "send" movies in theaters to moviegoers in cinema seats. Opp. at 6. Plaintiff's arguments are misplaced and her attempts to stretch the VPPA to cover such obviously unintended uses are unsupported and absurd. For example, Plaintiff's argument ignores the Senate Report's clear enunciation that "[t]he [VPPA] prohibits ***video stores*** from disclosing 'personally identifiable information.'" S. Rep. No. 100-599 at 7 (emphasis added). Reading is not a "video store." Second, and relatedly, the Senate Report

tellingly contains no references whatsoever to movie theaters or cinemas. To believe that by a single reference to the sale by video stores of "open-reel movies" among "laser disks" and "CDI technology" Congress meant to subject *movie theaters* to the VPPA is nonsensical. Indeed, the exact same argument was rejected in *Osheske*. *See* 2023 WL 8188464 at * 5, n.6 (noting that "open-reel movies" were commonly viewed in the home at the time the VPPA was enacted). If Congress had meant the VPPA to apply to movie theaters or other public movie-viewing locations, it would have stated so. Instead, there are ***zero*** references to "theater(s)," ***zero*** references to "cinemas," and ***zero*** references to "tickets." *Id.* at *5 (recognizing that "movie theaters were ubiquitous when the VPPA was enacted in 1988 and amended in 2013" "[y]et there is no suggestion from the statutory language or legislative history that Congress intended to extend a right to privacy to the public act of attending a movie theater showing"). There is simply no support in either the VPPA or the Senate Report to subject a movie theater to its terms. And Plaintiff's Opposition does not identify a single case in which a movie theater selling tickets was subject to the VPPA. Instead, Plaintiff cites only cases concerning streaming services.

## II. PLAINTIFF HAS NOT PLAUSIBLY ALLEGED SHE IS A "CONSUMER"

Just as Plaintiff's Complaint fails to sufficiently plead that Reading is a video tape service provider under the VPPA, Plaintiff also fails to establish that she is a "consumer." Plaintiff suggests that the unpublished case of *Goldstein v. Fandango Media, LLC*, No. 22-80569-CIV-MARRA, 2023 WL 3025111 (S.D. Fla. Mar. 7, 2023), supports her claim.[1] But the decision denying defendant's motion to dismiss in that case, a case brought by the same law firm representing Plaintiff here, was criticized in a published decision by the District Court for the

[1] Plaintiff cites *Christopherson v. Cinema Entertainment Corp.*, No. 23-cv-3614 (JWB/LIB), 2024 WL 1120925 (D. Minn. Mar. 6, 2024), but that case concerned a defendant's motion to stay discovery pending the resolution of the motion to dismiss, which the Court did not address.

Northern District of Illinois for failing to analyze the term "subscriber" in any substantive regard. *See Gardener v. MeTV*, 681 F. Supp. 3d 864, 871 (N.D. Ill. 2023) (granting MeTV's motion to dismiss on the basis that plaintiff was not a consumer).

In reviewing Plaintiff's claims, it is clear she is ***not*** a consumer as defined by the VPPA. First, Plaintiff claims she is a consumer because she pays for movie screenings. Opp. at 8. But purchasing a movie ticket does not make an individual a renter, purchaser, or subscriber ***of prerecorded video cassette tapes or similar audio-visual materials***. *See id.* (citing Compl. ¶ 74 for the allegation that Plaintiff purchased "tickets to a movie screening on December 2, 2023"). Neither does Plaintiff's allegation that she has an account at Angelika Film Center (through which Plaintiff alleges she purchases ***tickets***, *see* Opp. at 9) suffice, because, as stated above, the purchase of tickets is not covered by the VPPA. Nor does the signing up for a newsletter that offers discounts and special offers to movie screenings provide an avenue for Plaintiff to maintain a VPPA claim. *See* Opp. at 9. The Court should reject Plaintiff's attempt to fit the proverbial square peg in a round hole.

## III. PLAINTIFF PROVIDES NO JUSTIFICATION TO DELAY STRIKING THE FACIALLY IMPERMISSIBLE CLASS ALLEGATIONS

Plaintiff opposes the motion to strike class allegations by pleading that the motion to strike is premature and arguing that Plaintiff plausibly alleged she and the members of the movie screening and newsletter classes are consumers. Opp. at 11. First, Plaintiff offers nothing beyond her plea that the Court delay striking these facially impermissible class allegations. Indeed, Plaintiff offers nothing substantive at all. Second, and for the reasons discussed above, Plaintiff ***did not*** plausibly allege that Reading is a video tape service provider or that she (or any potential member) is a "consumer" under the VPPA. But even assuming Plaintiff's claim that she viewed movie "trailers" before buying a ticket somehow put her in the "consumer" category, and it does

not, the VPPA Movie Screening Class must nonetheless be stricken as a matter of law because purchasing a ticket is not protected by the VPPA. Further, the VPPA Account Class is impermissibly broad because simply having an account does not mean any videos were viewed. Finally, the VPPA Newsletter Class must be stricken because subscribing to a newsletter does not provide any "video streaming service"—instead, as Plaintiff recognizes, the newsletter provides only "weekly showtimes, film & event info, special offers & discounts, and free screening invitations." Compl. ¶ 53. There is no reason for the Court to wait to strike these facially deficient class allegations.

## IV. PLAINTIFF DOES NOT ALLEGE A BASIS FOR CAFA JURISDICTION

Plaintiff contends there is a rebuttal presumption regarding the validity of Plaintiff's allegations that CAFA jurisdiction exists—i.e., that there is a claim in controversy exceeding $5,000,000. Opp. at 13-14. Plaintiff's alleged basis for CAFA jurisdiction is her allegation that "Defendant sold at least 100,000 tickets to movie screenings taking place in the state of New York." Compl. ¶ 12. But, as stated above, movie tickets and theater screenings are not covered by the VPPA. There is, accordingly, no basis for CAFA jurisdiction or to grant Plaintiff a presumption that the dispute in controversy exceeds $5,000,000.

## V. THE OPPOSITION FAILS TO REFUTE WHAT THE COMPLAINT SHOWS - ANGELIKAFILMCENTER.COM COMPLIES WITH NEW YORK'S ARTS & CULTURAL AFFAIRS LAW § 25.07(4)

Plaintiff alleges Defendant's website violated NY ACAL because it failed disclosed its service fee "prior to the ticket being *selected for purchase*" and increased the price of tickets during the "purchasing process." *See* Compl. ¶¶ 98-100. Accordingly, the determinative issue is when the "purchasing process" begins. Plaintiff's claim fails because both the allegations and the legislative guidance she relies on state that "the ticket *purchasing process* begins once a consumer visits a ticket marketplace and first sees a list of *seat prices*." Compl. ¶ 64, Ex. A (emphasis

added); Sen. Skoufis Letter, at 2. Figure 17 in the Complaint demonstrates that, when a customer "first sees a list of *seat prices*" for their selected movie on Angelikafilmcenter.com, they also see the prominently disclosed and delineated $2.19 "Service Charge" and an accurate total, as required by § 25.07(4). Compl. ¶ 68. Only then does a customer select tickets "for purchase" within the meaning of NY ACAL § 25.07(4), and proceeds through not one, but *two* more screens that display the total price of the tickets, inclusive of the "Service Fee," before payment is collected. *See* Compl. ¶ 68, Figure 17 ("ORDER CONFIRMATION" *and* "PAYMENT" screens, notably not excerpted in the Complaint). Plaintiff's reliance on these screenshots is, accordingly, misplaced.

Similarly misplaced is Plaintiff's reliance on the "TICKET SELECTION" screen at Figure 16-A. *See* Opp. at 18. Contradicting her pleadings and the guidance she relies on in her Opposition, Plaintiff asserts that Angelikafilmcenter.com's "TICKET SELECTION" screen, which includes no option to select seats, is where the service fee should be disclosed and that, as a result, this screen "falsely states" the total cost of the tickets. *See* Opp. at 19-21. Not only does Plaintiff's interpretation of when a customer selects tickets *"for purchase*" contradict the Guidance and her allegations, it is refuted by the prominently displayed "Ticket Detail" disclosure included on the "TICKET SELECTION" page, which states "*[t]icket selections* will appear in the box *on the following page*." Indeed, the "TICKET SELECTION" page only further demonstrates that all customers visiting Angelikafilmcenter.com were on notice that ticket "selection" ***did not*** occur until inputting information on the following "SEAT SELECTION" page (Figure 17), where the accurate total cost of the tickets and clearly delineated "Service Charge" appear. Compl. ¶ 68.

Recognizing the Complaint's facial deficiencies, Plaintiff heavily relies on the recently decided case of *Charles v. Color Factory, LLC*, No. 24-cv-322, 2024 WL 169236 (S.D.N.Y. Apr. 19, 2024) and argues that this case is analogous and calls for the same result. It does not. *Color*

*Factory* involved a transaction flow process determinatively distinguishable from the process alleged in the Complaint here. In *Color Factory,* the defendant's website failed to disclose *any* "ancillary fees" at *anytime* during the ticket purchase transaction. *Id*. at *3. Color Factory's website bundled "Taxes & Fees" into a single sum and "*never* disclose[d] the composition of the $8.99 of 'Taxes & Fees,'" which the Court found may violate the statutory requirement that defendant 'disclose in a clear and conspicuous manner the portion of the ticket price stated in dollars that represents a service charge, or any other fee or surcharge to the purchaser" – an issue not present in this case. *Id*. (emphasis added). Here, the Complaint shows that the ticket prices and the service charge are separately calculated and prominently displayed.

Second, Color Factory's website did not disclose the bundled "Taxes & Fees" until the "final checkout screen[,]" precisely the type of delayed disclosure NY ACAL § 25.07(4) is intended to prohibit. *See* Compl. Ex. A (noting that only "[w]here an online purchaser ***is nearing the end of the purchasing process, after selecting the tickets***, the final total price should . . . include the fully disclosed ticket price" (emphasis added)); Opp. at 17, citing Fraietta Decl., Ex. A at 26 ("By not having a *true picture of the price of a ticket until checkout*, the customer lacks timely and valuable information to be able to make a fully informed purchase based on 'shopping around' among similar resellers"). Indeed, a consumer visiting Color Factory's website was required to proceed through approximately *five* steps, viewing the pricing without the inclusion of ancillary fees no fewer than four times throughout that process, before the bundled "Taxes & Fees" were disclosed. Here, Plaintiff knew the total price of her tickets from the moment she was given the option to select her seat, and proceeded through two additional screens that also included the full pricing before entering her payment information and executing the transaction.

Ultimately, the *Color Factory* decision, and the distinguishable transaction flow process addressed therein, provides an instructive example of why the transaction flow process on Angelikafilmcenter.com complies with NY ACAL § 25.07(4) as a matter of law. The process alleged in the Complaint shows that Angelikafilmcenter.com correctly displayed "the total cost of the ticket, with a breakdown of all service charges, fees and surcharges" "prior to the ticket being *selected for purchase*." The alleged process did not require consumers to "search for the total price" of a movie ticket. Accordingly, Plaintiff's NY ACAL must fail as a matter of law.

## VI. BECAUSE THE SERVICE FEE WAS PROPERLY DISCLOSED, PLAINTIFF DOES NOT HAVE STANDING

The Opposition does not remedy Plaintiff's failure to plead facts demonstrating that she suffered an injury-in-fact as a result of Defendant's alleged conduct. Plaintiff's cited caselaw recognizes that there is a two-pronged test for sufficiently alleging an informational injury: (1) allegations showing a "defendant has deprived him of information required to make a 'meaningful choice' on the subject of his inquiry … ***[and]*** (2) allegations showing "downstream consequences from failing to receive the required information," namely "an interest in using the information beyond bringing [his] lawsuit." *Young v. Metro. Learning Inst., Inc.*, No. 22-CV-1722 (JPO), 2023 U.S. Dist. LEXIS 23206, *14 (S.D.N.Y. Feb. 10, 2023) (emphasis added). The Complaint is devoid of allegations supporting either prong of this test.

First, Plaintiff argues that by learning of the $2.19 "Service Charge" at the "SEAT SELECTION" page as opposed to the "TICKET SELECTION" page, she was deprived of the information needed to make a "meaningful choice." *See* Opp. at 16-17. Yet Plaintiff simultaneously admits that she was a *long-time* purchaser of movie tickets from the AngelikaFilmCenter.com website. *See* Compl. ¶ 72. Moreover, the Complaint shows that Plaintiff proceeded through not one, but ***two additional screens*** knowing the price of the tickets and the

service fee, giving her ample opportunity to evaluate the price of her tickets. *See* Compl. ¶ 68. Although the pleading standard may be liberal, contradictory allegations such as these are not deserving of the presumption of truth. *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 505 B.R. 135, 141 (S.D.N.Y. 2013) ("allegations contradicted by documents incorporated into the pleadings by reference need not be accepted as true").

Second, the Complaint is devoid of allegations of any "downstream consequences" beyond an interest in bringing this litigation. Through her Opposition, Plaintiff attempts to remedy her pleading deficiency by arguing that the "downstream consequence" of learning of the service fee on the "SEAT SELECTION" page is "market distortion" that potentially leads consumers to "overpay" for movie tickets. *See* Opp. at 17. But none of Plaintiff's allegations mention "market distortion" or that Plaintiff "overpaid" for her tickets at all.

Finally, as explained above, the *Color Factory* decision does not save Plaintiff's claim with respect to standing. As alleged in the Complaint, there is nothing unlawful about the transaction flow process or the service fee[2] charged on Angelikafilmcenter.com, and conclusory allegations to the contrary are directly contradicted by the process alleged in the Complaint. Thus, these allegations are not entitled to the presumption of truth. *Sec. Investor Prot. Corp.*, 505 B.R. at 141.

Ultimately, Plaintiff cannot avoid the fact that "a statutory violation alone" does not confer Article III standing. *Harty v. West Point Realty, Inc.*, 28 F. 4th 435, 444 (2d Cir. 2022) (citing

[2] Plaintiff claims that the $2.19 service charge per ticket may, in itself, be unlawful, an allegation notably absent from the Complaint. *See* Opp. at 16 n.3. Again, Plaintiff self-servingly omits portions of the applicable statute, which explicitly contemplates that "a reasonable service charge" includes fees charged for "***sales away from the box office***[,]" which is the case here. NY CLS Art & Cult Affr § 25.29. Nonetheless, the Complaint does not include allegations that the charging of the service fee was, in itself, unlawful, and thus Plaintiffs' arguments should not be considered.

*TransUnion*, 594 U.S. at 426). Thus, because Plaintiff failed to allege that she paid an unlawful fee or facts sufficient to state a claim for an informational injury, her claim fails as a matter of law.

## VII. THE VOLUNTARY PAYMENT DOCTRINE REQUIRES DISMISSAL OF THE COMPLAINT

Plaintiff's assertion that the voluntary payment doctrine is "inapplicable" is inaccurate and belied by the authorities relied on in the Opposition. *See* Opp. at 22. Again, Plaintiff relies on *Color Factory* to support her assertion, but the Court's holding with respect to the voluntary payment doctrine in that case was entirely based on defendant's failure to *ever* disclose the amount of fees being charged, an allegation plainly at odds with the Complaint's allegations here. The limitation of *Color Factory*'s holding on the doctrine is further demonstrated by the citations relied on by the Court. In *Fink v. Time Warner Cable*, 810 F. Supp. 2d 633 (S.D.N.Y. 2011), plaintiff alleged the defendant *never* "disclose[d] that it would interfere with or limit their internet connections or their attempts to engage in peer-to-peer communication."

Here, Plaintiff does not, because she cannot, allege that the service fee was not clearly, conspicuously, and fully disclosed prior to her purchase – as the Complaint proves that it was. Accordingly, Plaintiff's suggestion that she did not know the fee was "imposed" is in conflict with her own allegations, and her contention that the doctrine is inapplicable under a theory of "mistake" is equally implausible when considered alongside the images included in the Complaint and the allegations of her longtime use of the website.

Moreover, Plaintiff does not, because she cannot, allege that the service fee was inherently unlawful. *See* Opp. at 23; NY CLS Art & Cult Affr § 25.29; *see also supra* at 8, n.2. Indeed, the Complaint does not dispute that Reading is permitted to apply a service charge. Instead, the Complaint challenges only ***when*** it was displayed. Accordingly, caselaw standing for the proposition that the doctrine is not a defense in actions to recover fees and payments that are

*categorically* impermissible is inapplicable to this case. *See, e.g.*, *Dougherty v. North Fork Bank*, 301 A.D.2d 491, 492-93 (2d Dep't 2003) (voluntary payment doctrine not a defense for charging fee explicitly prohibited by statute); *Schwartz v. Torrenzano*, 49 Misc. 3d 943, 944 (Sup. Ct. Suffolk Cty. 2015) (voluntary payment doctrine not a defense to action to recover illegally charged regent where "the existence of a valid rental permit was a condition precedent to the collection of rent").

## VIII. CONCLUSION

For the reasons stated herein, Reading respectfully requests the Court dismiss the Complaint in its entirety, or, in the alternative, strike the class allegations.

DATED this 7th day of June, 2024

**GREENBERG TRAURIG, LLP**

By: */s/ Sarah E. Atlas*
Sarah E. Atlas
One Vanderbilt Avenue
New York, NY 10017
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
Email: atlass@gtlaw.com

Mark E. Ferrario, Esq.
Nevada Bar. No. 1625
(*Pro Hac Vice Pending*)
Tyler Andrews, Esq.
(*Pro Hac Vice Forth Pending*)
Nevada Bar No. 9499
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002
Email: ferrariom@gtlaw.com
tyler.andrews@gtlaw.com

*Attorneys for Reading International, Inc.*