GreenbergTraurig

Mark E. Ferrario
Tel (702) 792-3773
Fax (702) 792-9002
ferrariom@gtlaw.com

Tyler Andrews
Tel (702) 792-3773
Fax (702) 792-9002
tyler.andrews@gtlaw.com

Sarah E. Atlas
Tel (212) 801-9200
Fax (212) 801-6400
atlass@gtlaw.com

December 13, 2024

**VIA ELECTRONIC CASE FILING**
Honorable Paul A. Engelmayer
United States District Court
Thurgood Marshall United States Courthouse
Southern District of New York
40 Foley Square, Room 2201
New York, NY 10007

Re: ***Berryman v. Reading International, Inc.*, Case No. 24-cv-00750-PAE**

Dear Judge Engelmayer:

Plaintiff relies on two conclusory allegations to contend that "Angelika Film Center 'deal[s] in audiovisual goods or services'" because it "delivers hundreds of videos on its website" and "delivers open-reel movies on the silver screens in its many brick-and-mortar theaters locations." ECF No. 31 at 1. Plaintiff's conclusory allegations do not align with precedent interpreting the VPPA.

## I. Reading is Not a Video Tape Service Provider Just Because It Provides Links to YouTube Movie Trailers on its Website.

Plaintiff contends that its allegation in Paragraph 85 of the Complaint (that "Defendant . . . delivers hundreds of videos on its website") establishes that Angelika Film Center "deal[s] in audiovisual goods or services" and is therefore a video tape service provider. ECF No. 31 at 1. Plaintiff's support for her contention, however, is inapposite and inapplicable.

***First***, Plaintiff refers to a case concerning NBC Universal Media, a news organization, whose Today.com website permits visitors to watch "TODAY All Day" – a 24/7 streaming channel from NBC News – as well as full, on-demand, pre-recorded episodes. *See Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 156 (S.D.N.Y. 2023) (analyzing "Was Today.com a Video Tape Service Provider"); *see also* https://www.today.com/ (containing links to https://www.today.com/allday (TODAY All Day); https://www.nbc.com/today?nbc=1 (to

GT GreenbergTraurig

watch all episodes); and https://www.today.com/on-the-show (containing "On the Show" videos)).

There, NBC Universal's Today.com business was plausibly built on providing "audiovisual goods or services" to its website visitors. The same is true with respect to streaming services generally. *E.g.*, *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090 (N.D. Cal. 2015) (Hulu's streaming service); *Ellis v. Cartoon Network, Inc.*, No. 1:14-CV-484-TWT, 2014 WL 5023535 (N.D. Ga. Oct. 8, 2014) (where the plaintiff downloaded the Cartoon Network App and used it to watch videos). In each case, the defendant's business at least plausibly is built on the delivery of materials to individuals in the privacy of their homes.

The same is not true with respect to brick-and-mortar movie theaters or ticket sales. And, tellingly, Plaintiff's supplemental opposition still cites no case analogous to their claim here.

***Second***, Plaintiff claims that *Salazar* (in analyzing "consumers") holds the VPPA applicable to even those that "dabble in video rentals." ECF No. 31 at 2 (quoting *Salazar*, 118 F.4th at 549). Even if an accurate recitation of the *Salazar* decision, the Complaint's allegations do not support that Reading's business "dabbles in video rentals." As a primary point, the example described in *Salazar* describes a company which profits from the sale, rental, or delivery of audio-visual materials directly—even if just a minor component of its larger sales business. 118 F.4th at 548 ("think a general store ***that rents out a few movies***" (emphasis added)). There is no allegation that Reading profits from the sale, rental, or delivery of movie trailers linked on its website.

Plaintiff's incomplete references to "department store[s]," "golf shop[s]," and "continuity club[s]" does not help her argument. ECF No. 31 at 2 (citing S. Rep. 100-599 at 12-13). Those references are to businesses that include in their offerings the sale, rental, or delivery (and thus the business would profit from) pre-recorded videos and similar audio-visual materials—which Plaintiff omits in its supplemental opposition. *See* S. Rep. 100-599 at 13 ("***Some video tape service providers sell limited types of videos. For example, a golf shop may rent or sell golf videos, or a continuity club might rent or sell only Star Trek videos.***" (emphasis added)).

Reading does not "sell," "rent," or in any way profit from the movie trailer links included on its website (which customers may or may not even watch). There is no basis to hold Reading liable under the VPPA.

## II. Reading is Not a Video Tape Service Provider Simply by Virtue of Delivering "Open-Reel Movies on the Silver Screen."

Plaintiff alternatively claims that Reading is engaged in the business of audiovisual goods or services because it "delivers open-reel movies on the silver screens in its many brick-and-mortar theater locations." ECF No. 31 at 1, 2. Plaintiff relies on a single reference to "open-reel movies" in the Senate Report describing the types of technologies that might provide audio visual

materials beyond cassette tapes. *Id.* at 2 (citing *Louth v. NFL Enterprises LLC*, No. 1:21-cv-00405-MSM-PAS, 2022 WL 4130866, at *4 (D.R.I. Sept. 12, 2022)[1]).

If Plaintiff's claim had any merit—that physical theaters projecting movies were meant to be included under the purview of the VPPA—the VPPA and Senate Report would contain some reference to movie theaters, but they do not. To that point, movie theaters had long been in existence prior to 1988 when the VPPA was passed. Yet there is not a single reference to physical theaters. Just the opposite, of the three references to "movie" in the Senate Report, the only substantive reference is to "watch[ing] movies in our living rooms"—i.e., in private, S. Rep. 100-599 at 6, not in a public theater. Besides the three references to "movie," there are zero references to "theater[s]" and zero references to "cinema[s]."

If Congress meant the VPPA to apply to movie theaters, Congress would not have done so in the vaguest of ways. *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) (stating that in crafting a regulatory scheme, Congress does not do so "in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes").

Plaintiff otherwise offers no textual, interpretive, or legislative support that the VPPA was meant to cover movie theaters offering ticket sales.

## III. The Ninth Circuit's Oral Argument Is Not Precedential and Only Undermines Plaintiff's Claims.

As an initial matter, the Court should not, and need not, consider the briefing of separate parties or their arguments in a separate proceeding when the text of the VPPA and interpretive caselaw does not support Plaintiff's attempt to stretch the VPPA to an untenable limit. Even if they could be considered, rather than support Plaintiff's claims, the Ninth Circuit argument undermines Plaintiff's claims by confirming the points discussed above.

The very first question from the Ninth Circuit was: "What do we do about the fact that the motion picture technology was well established and they seemed to choose not to use those terms?" (https://www.youtube.com/watch?v=KICKFyYB00M&t=1124s at 1:40.) The Court also noted, in response to Osheske's own acknowledgement, that "Congress did have at its forefront of its mind a video rental store when it drafted the act" (to which Osheshke attempted to argue that Congress meant to provide broader language) (*id*. at 3:16), that Congress did nothing to amend the VPPA to bring movie theaters into its scope (*id*. at 3:28) and that "we are getting far afield from the statute at this point." (*Id*. at 3:59). The Court also asked: "Are we supposed to just ignore the places in the legislative history where it talks about the privacy of what you watch and read in your own homes"—focusing on the very privacy interests that motivated the VPPA's passage. (*Id*. at 8:32.) Osheske's response, perceiving the lack of privacy interest in the ***public act*** of attending a movie at a theater, was that the references to "privacy" in the legislative history were "vague" and should not be relied on. (*Id.* at 8:48.)

[1] The only reference to "open-reel movies" in *Louth* is as part of a broader quotation of the Senate Report. *See Louth*, 2022 WL 4130866 at *4 (referring to "laser discs, open-reel movies, and CDI technologies"). NFL Enterprises does not own or manage movie theaters. *See generally id.*

GT GreenbergTraurig

As for the two questions that Plaintiff refers to in her supplemental opposition ((1) concerning the privacy interests (*id*. at 18:08) and (2) concerning the allegations in the Complaint (*id*. at 19:54)), the former concerned the expectations of privacy attendant with viewing a movie in one's home compared to sitting in a public theater. The latter, as demonstrated by counsel's response, was in the context of the alternative and separate basis of whether Osheske had sufficiently alleged their personal information was disclosed, ***which neither party addressed in their briefings and which the Court appeared to accept as beyond the scope of the current appeal***. (*Id*. at 20:15.)

On rebuttal, the Court again pushed back against Osheske's interpretation requiring the Court to read in language to the VPPA (*id.* at 21:54, 22:10)—to which Osheske referred to a case concerning Netflix, a streaming service provider, not to a movie theater. (*Id.* at 22:26.)

Stated simply, the Ninth Circuit argument provides no support for Plaintiff's contention here that movie theaters "deal in [the type of video cassette tapes or similar] audiovisual goods or services" that are subject to the VPPA.

## IV. Conclusion

For the reasons stated in Readings' motion, reply, and supplemental briefing, Reading respectfully requests the Court dismiss Plaintiff's VPPA claim.

To the extent the Court views additional argument as helpful, Reading respectfully requests the Court set oral argument on this matter.

Respectfully submitted,

*<u>/s/ Tyler Andrews</u>*
Mark E. Ferrario
Tyler Andrews
Sarah E. Atlas

*Counsel for Defendant*
*Reading International, Inc*.

cc: All counsel of record (via ECF)