**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HALEY BERRYMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>READING INTERNATIONAL, INC.,<br><br>Defendant. | Case No.: 1:24-cv-00750-PAE |

# DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS COUNT I OF THE FIRST AMENDED CLASS ACTION COMPLAINT

**GREENBERG TRAURIG, LLP**
One Vanderbilt Avenue
New York, New York 10017
Tel. (212) 801-9200
*Attorneys for Defendant*
*Reading International, Inc.*

# TABLE OF CONTENTS

**Pages**


I. PLAINTIFF DOES NOT SUPPORT HER CONCLUSORY ALLEGATION THAT READING DISCLOSED HER NAME AND EMAIL ADDRESS TO FACEBOOK ..... 1

II. PLAINTIFF FAILS TO SHOW THAT ANY VIDEO TRAILER WAS VIEWED ..... 4

III. CONCLUSION ..... 5

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Golden v. NBCUniversal Media, LLC (Golden I)*,
688 F. Supp. 3d 150 (S.D.N.Y. 2023)....5

*Golden v. NBCUniversal Media, LLC (Golden II)*,
No. 1:22-cv-09858-PAE, 2025 WL 2530689 (S.D.N.Y. Sept. 3, 2025)....5

*Goldstein v. Fandango Media, LLC*,
2023 WL 3025111 (S.D. Fla. Mar. 7, 2023)....3, 4

*Hamilton v. Westchester Cnty.*,
3 F.4th 86, 91 (2d Cir. 2021)....2

*Hirsch v. Arthur Anderson & Co.*,
72 F.3d 1085, 1092 (2d Cir. 1995)....2

*Jenkins v. S & A Chaissan & Sons, Inc.*,
449 F.Supp. 216 (S.D.N.Y. 1978)....3

*Lebakken v. WebMD, LLC*,
640 F. Supp. 3d 1335 (N.D. Ga. 2022)....3, 4

*Solomon v. Flipps Media, Inc.*,
136 F.4th 41 (2d Cir. 2025)....1

*Walker v. New York State Department of Health*,
788 F. Supp. 3d 427, 508 (E.D.N.Y. 2025)....2

Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss Count I of the First Amended Complaint (the "Opposition") rests on Plaintiff's false conflation that (a) Reading allegedly discloses cookie data to Facebook and (b) Reading separately obtains its customers' names and email addresses when they subscribe to its newsletter or open an account. While Plaintiff alleges in conclusory fashion that newsletter and account opening information is disclosed to Facebook, Plaintiff includes no screenshot supporting its allegation—because Plaintiff has no support for this theory. Accordingly, and for the reasons stated herein and in the Memorandum of Law in Support of Defendant Reading International, Inc.'s Motion to Dismiss Counts I and II of the First Amended Class Action Complaint (the "Motion"), Reading respectfully requests the Court dismiss Count I of the First Amended Class Action Complaint ("FAC").[1]

## I. PLAINTIFF DOES NOT SUPPORT HER CONCLUSORY ALLEGATION THAT READING DISCLOSED HER NAME AND EMAIL ADDRESS TO FACEBOOK

The Opposition contends that, unlike *Solomon v. Flipps Media, Inc.*, 136 F.4th 41 (2d Cir. 2025), "[t]his case involves the disclosure of Plaintiff's first and last name, along with the titles of movie trailers she obtained." Opposition at 1 (citing FAC ¶¶ 64-73, 86, and 90, and Figure 20). None of Plaintiff's cited references support her conclusory allegation, however.

Paragraphs 64 through 66 concern Plaintiff's allegations regarding "Advanced Matching," which Plaintiff alleges, "[w]hen activated, the Facebook Tracking Pixel will 'look for recognizable form field and other sources on your website that contain information such as first name, last name and email," and then "hash[ ]" the information into "digital data." FAC ¶ 64. Plaintiff further alleges that "Defendant's Facebook Tracking Pixel is configured to scan form fields containing a user's email, first name, and last name." FAC ¶ 66.

---

[1] Plaintiff does not oppose the dismissal of Count II, (Opposition at 1 n.1) and thus it should be dismissed.

As a threshold matter, even the statement that "Defendant's Website . . . uses 'Advanced Matching'" has no supporting factual allegations whatsoever. *See* FAC ¶ 64. Further still, there is no demonstration that Plaintiff's first or last name were ever disclosed to Facebook or even captured in the "digital data" Facebook allegedly collects—let alone that an ordinary person might be able to use to identify Plaintiff as having requested or viewed a specific movie trailer. The only Figure included with respect to the Advanced Matching tool is Figure 10, which is Facebook's look-up table taken from Facebook's website, containing fields that theoretically could be enabled by use of the Advanced Matching tool. FAC ¶ 66. ***But nowhere is it even demonstrated that this information was disclosed to Facebook by Reading in conjunction with movie trailer views, let alone captured together by Reading in the first place***. *See, e.g.*, *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 91 (2d Cir. 2021) (stating a court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations"); *see also Walker v. New York State Department of Health*, 788 F. Supp. 3d 427, 508 (E.D.N.Y. 2025) (rejecting conclusory factual allegations). Indeed, simply stating that Facebook has a tool that *could* be used to capture such information reveals nothing about whether Reading actually used the tool in this manner or transmitted such information to Facebook, as Plaintiff claims in conclusory fashion here.

Paragraphs 71 and Figures 11, 12, and 20 fare no better. While they correctly display how Reading collects information such as a newsletter subscriber's email address, or an account holder's name when the customer signs up for these separate services, there is no connective tissue to the disclosures of video material alleged to Facebook that are identified in Figures 3, 4, 5, 6, 7, or 8, which are the ***only paragraphs in which an allegation of information disclosed to Facebook appears***. *See Hirsch v. Arthur Anderson & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995) (stating that "conclusory allegations need not be credited, however, when they are belied by more specific

allegations of the complaint"); *Jenkins v. S & A Chaissan & Sons, Inc.*, 449 F.Supp. 216, 227 (S.D.N.Y. 1978) ("[T]he bald statement that the farm received a fee need not be blindly accepted in view of the more specific allegations of paragraph 20 of the complaint which state that recruitment was accomplished through the USTES system."). Indeed, the disparate treatment of specific figures showing alleged disclosure to Facebook of cookie data in Figures 3, 4, 5, 6, 7 and 8 is in direct contrast with the complete lack of any figure showing the alleged disclosure to Facebook of names and email addresses of account holders or newsletter subscribers.

Stated simply, there are two wholly separate alleged happenings at play: (1) the disclosure of cookie data to Facebook (when a movie ticket is purchased) (Figures 3, 4, 5, 6, 7, and 8); and (2) Reading's collection of account information when a customer signs up for the company's newsletter or to create a user account. Plaintiff is attempting to simply smash the two together to maintain a VPPA claim in the face of clear caselaw to the contrary. Plaintiff cannot do so. Indeed, there is no supporting evidence that account information (contrasted to Facebook IDs or cookie data) is allegedly disclosed to Facebook *at all*, much less disclosure of information discernable by an "ordinary person." And it is equally telling that whereas Plaintiff twice cites the Facebook disclosure held insufficient in *Solomon*, *see* Opposition at 2, 11, Plaintiff does <u>not</u> provide any screenshot or figure showing the alleged disclosure of her first or last name or email address to Facebook occurring here.

Because Plaintiff does not plausibly allege that her name or email address was disclosed to Facebook, let alone that it is discernable to an "ordinary person," Plaintiff's VPPA claim should be dismissed.[2]

[2] Plaintiff cites cases such as *Goldstein v. Fandango Media, LLC* and *Lebakken v. WebMD, LLC*, but such cases are inapposite. Opposition at 10. *Goldstein* is an unpublished case from 2023 from the Southern District of Florida that does not contain analysis whether an allegation of Advanced

## II. PLAINTIFF FAILS TO SHOW THAT ANY VIDEO TRAILER WAS VIEWED

In response to Reading's demonstration that the URL "www.angelikafilmcenter.com/villageeast/film/barbie?date=2024-01-03" does not reveal video consumption history but instead demonstrates the date and showing for which a movie ticket is purchased (i.e., for January 3, 2024 to see the Barbie movie), Plaintiff contends that "the webpage contain[s] the video movie trailer" and thus "an ordinary person who sees a 'View Content' event with that clean URL can readily discover the consumer navigated to a page where they could view the *Barbie* movie trailer content." Opposition at 3.

Even the Opposition concedes (as it must) that all that Facebook would be able to see in this situation is that an individual visited a website where they allegedly "could" watch a Barbie movie trailer. There is no follow-up allegation that Facebook would be able to discern one way or the other whether said movie trailer was even viewed. This alone should defeat Plaintiff's VPPA claim. Nor does the complaint allege that a movie trailer was even included within the website at issue. That is because the URL allegedly disclosed to Facebook is the link to the page on which a movie ***ticket*** is purchased. The word "trailer" nowhere appears in the long hash provided in Figure 5. Nor does the allegedly disclosed URL contain the embedded URL to YouTube where the movie trailer may be viewed. That is not surprising, however, because the only alleged "content" actually alleged to be disclosed to Facebook is the *movie ticket* purchase,

---

Matching alone can sustain a VPPA claim. *See Goldstein v. Fandango Media, LLC*, 2023 WL 3025111 (S.D. Fla. Mar. 7, 2023). And *Lebakken* is a 2022 case from the Northern District of Georgia that contains <u>no</u> reference or analysis of "advanced matching" but instead parrots the allegation of the disclosure of the plaintiff's "Facebook ID and email address in connection with her video viewing information." *Lebakken v. WebMD, LLC*, 640 F. Supp. 3d 1335 (N.D. Ga. 2022). In any event, because there is no support rendering the conclusory allegation *plausible* in this case, the allegation must be rejected.

which Plaintiff now seeks to recast in the *movie trailer* context because of this Court's prior order dismissing the VPPA claim premised on purchase of a movie ticket.

Plaintiff seeks a workaround to the clear deficiency in her pleading by contending that "a person can 'obtain' a video material or service without having ever 'actively elected to view videos.'" Opposition at 4 (stating "[t]he statute, after all, was prompted by disclosure of the list of videos Judge Bork rented—not those he had viewed." (quoting *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 161 (S.D.N.Y. 2023) (*Golden I*)). This is a red herring because in the rental context, unlike here, a customer is still making a decision on which materials to rent. And Plaintiff's reliance on dicta from a preceding decision from August 23, 2023, is erroneous and misplaced given the subsequent change in law and the Court's decision in *Golden v. NBCUniversal Media, LLC*, 2025 WL 2530689 (S.D.N.Y. Sept. 3, 2025) (*Golden II*).

In *Golden I*, the complaint alleged that Today.com "disclosed 'specific video materials'—to wit, each video's URL and name." 688 F. Supp. 3d at 160-161. Plaintiff here does not allege the disclosure of any specific video's URL. Instead, Plaintiff alleges that she landed on the Barbie ticket purchasing page, which separately contains a URL to YouTube for the movie trailer, and that Facebook disclosed the webpage she landed on to purchase the ticket ***but Plaintiff does not allege that the embedded movie trailer URL was disclosed***. Accordingly, and for the same reasons stated in the Motion, ***the movie trailer's URL was not disclosed***. Nor was any information about video materials that were "requested" or "obtained."

For this independent reason, the VPPA claim must be dismissed.

## III. CONCLUSION

For the reasons stated herein, Reading respectfully requests the Court dismiss the VPPA and NY VCPA claims from the FAC.

DATED this 10th day of November 2025

**GREENBERG TRAURIG, LLP**

By: */s/ Mark E. Ferrario*
Mark E. Ferrario, Esq.
Nevada Bar. No. 1625
Tyler Andrews, Esq.
Nevada Bar No. 9499
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002
Email: ferrariom@gtlaw.com
tyler.andrews@gtlaw.com

Sarah E. Atlas
One Vanderbilt Avenue
New York, NY 10017
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
Email: atlass@gtlaw.com

*Attorneys for Reading International, Inc.*