**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

HALEY BERRYMAN, individually and on behalf of all others similarly situated,

Plaintiff,

v.

READING INTERNATIONAL, INC.,

Defendant.

Case No. 1:24-cv-00750-PAE

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVE, AND APPOINTMENT OF CLASS COUNSEL**

Dated: June 15, 2026

**BURSOR & FISHER, P.A.**
Philip L. Fraietta
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: (914) 874-0710
Facsimile: (914) 206-3656
Email: pfraietta@bursor.com

Alec M. Leslie
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163

Stefan Bogdanovich
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: sbogdanovich@bursor.com

*Proposed Class Counsel*

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1
FACTUAL BACKGROUND ........................................................................................ 4
A. Reading Failed To Display The Total Cost Of Its Tickets, Inclusive Of The Service Charge, When The Price Was First Displayed Throughout The Class Period ........................................................................................................ 4
B. Plaintiff's Experience........................................................................................ 6
LEGAL STANDARD.................................................................................................. 7
ARGUMENT .............................................................................................................. 8
I. The Requirements Of Rule 23(a) Are Readily Met ............................................ 8
A. Numerosity Is Satisfied...................................................................................... 8
B. Commonality Is Satisfied.................................................................................... 9
C. Typicality Is Satisfied ........................................................................................ 10
D. Adequacy Of Representation Is Satisfied .......................................................... 11
E. The Class May Be Objectively Ascertained ....................................................... 13
II. The Proposed Classes Satisfy The Requirements Of Rule 23(b)(3) .................. 14
A. Common Questions Of Law Or Fact Predominate ............................................ 14
B. Class-Wide Relief Can Be Proved On A Common Basis .................................. 15
C. Class Litigation Is Superior To Other Methods Of Adjudication ...................... 16
CONCLUSION.......................................................................................................... 16

# TABLE OF AUTHORITIES

PAGE(S)

## CASES

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .......... 7, 14

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
133 S. Ct. 1184 (2013).......... 14

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
222 F.3d 52 (2d Cir. 2000) .......... 11

*Borden v. 400 E. 55th St., Assoc., L.P.*,
24 N.Y.3d 382 (2014).......... 11

*Cammayo v. 1and8, Inc.*,
2025 WL 1713287 (N.Y. Sup. Ct., Richmond Cnty. June 12, 2025).......... 3

*Carpenters Pension Trust Fund v. Barclays PLC*,
2015 WL 5000849 (S.D.N.Y. Aug. 20, 2015).......... 16

*Cassese v. Washington Mut., Inc.*,
255 F.R.D. 89 (E.D.N.Y. 2008).......... 10, 15

*Consol. Rail Corp. v. Hyde Park*,
47 F.3d 473 (2d Cir. 1995) .......... 8

*Ebin v. Kangadis Food Inc.*,
297 F.R.D. 561 (S.D.N.Y. 2014).......... 12, 13

*Fogarazzao v. Lehman Bros., Inc.*,
232 F.R.D. 176 (S.D.N.Y. 2005).......... 10

*Gortat v. Capala Bros., Inc.*,
257 F.R.D. 353 (E.D.N.Y. 2009).......... 8

*Gortat v. Capala Bros., Inc.*,
2010 WL 1423018 (E.D.N.Y. Apr. 9, 2010)
*aff'd,* 568 F. App'x 78 (2d Cir. 2014).......... 13

*Green v. Wolf Corp.*,
406 F.2d 291 (2d Cir. 1968) .......... 10

*Henderson v. Bank of New York Mellon, N.A.*,
332 F. Supp. 3d 419 (D. Mass. 2018).......... 3

*In re Petrobras Securities*,
862 F.3d 250 (2d Cir. 2017) .......... 13

*In re Visa Check / MasterMoney Antitrust Litig.*,
280 F.3d 124 (2d Cir. 2001) .......... 7

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004) .......... 16

*Marisol A. v. Giuliani*,
126 F.3d 372 (2d Cir. 1997) .......... 8

*Moore v. PaineWebber, Inc.*,
306 F.3d 1247 (2d Cir. 2002) .......... 14

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) .......... 7

*Pichardo v. Carmine's Broadway Feast Inc.*,
2016 WL 5338551 (S.D.N.Y. Sept. 26, 2016) .......... 10

*Polvay v. FCTI, Inc.*,
713 F. Supp. 3d 1 (S.D.N.Y. 2024) .......... Passim

*Presson v. Alamo Intermediate II Holdings, LLC*,
2025 WL 3088978 (S.D.N.Y. Nov. 5, 2025) .......... 13

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993) .......... 10

*San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*,
349 F.R.D. 606 (S.D.N.Y. 2025) .......... 15

*Seijas v. Republic of Argentina*,
606 F.3d 53 (2d Cir. 2010) .......... 16

*Sykes v. Mel S. Harris and Associates LLC*,
780 F.3d 70 (2d Cir. 2015) .......... 9, 15

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011) .......... 8, 9

**STATUTES**

N.Y. Arts & Cult. Aff. Law § 25.07(4) .......... 1, 7

**RULES**


Fed. R. Civ. P. 23 .......... 3, 7, 8

Fed. R. Civ. P. 23(a) .......... 7, 8, 13

Fed. R. Civ. P. 23(a)(3) .......... 10

Fed. R. Civ. P. 23(a)(4) .......... 11

Fed. R. Civ. P. 23(b) .......... 7

Fed. R. Civ. P. 23(b)(3) .......... 14, 16

## INTRODUCTION

This case is tailor-made for class certification. New York Arts & Cultural Affairs Law ("ACAL") § 25.07(4) requires that "[e]very operator or operator's agent of a place of entertainment"—such as Defendant Reading International, Inc. ("Defendant" or "Reading"), which owns and operates the Angelika Film Center cinemas in New York—"shall disclose the total cost of the ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket" and that "[s]uch disclosure of the total cost and fees shall be displayed in the ticket listing prior to the ticket being selected for purchase." ACAL § 25.07(4). Reading did not do so from August 29, 2022 (the date ACAL § 25.07(4) went into effect) until at least March 27, 2024. Ex. 1, First Amended Class Action Complaint ("FAC") ¶¶ 8-19. Reading's Executive Vice President, Chief Information Officer, and Rule 30(b)(6) designee, John Goeddel, confirmed as much at his deposition:

> Q: During that time period, August 29, 2022 through April, May, June 2024, the service charge was not displayed until after an individual had selected the type and quantity of tickets that he or she wanted to purchase, right?
>
> A: Correct.

Ex. 2, Deposition of John Goeddel ("Goeddel Dep.") at 35:6–12.[1]

The undisclosed service charge was no accident of a single screen; it was a uniform feature of every online ticket sale at every Angelika Film Center location in New York throughout the class period. *See* Ex. 3, Defendant's Second Supplemental Interrogatory Response to No. 11 (Reading's "checkout flow on its website was uniform during the proposed class period and as alleged in Plaintiff's Complaint," and Reading "amended its website on March 27, 2024 to display

[1]All "Ex." citations are attached to the Declaration of Philip L. Fraietta In Support of Plaintiff's Motion for Class Certification ("Fraietta Decl."), submitted herewith. Objections are omitted from all deposition testimony quoted in this brief unless otherwise indicated.

the service fee on the screen when it first shows the type of ticket" that may be purchased).[2] Mr. Goeddel, who has been responsible for the presentation of the Angelika Film Center website since at least 2018, confirmed that the displayed ticket price was never the price a consumer could actually pay:

> Q: So $18, the price that is displayed, that's not the price that the user would have paid under any circumstance, correct?
>
> A: If the seats were available, that's correct.

*Id.* at 37:22–38:3. Mr. Goeddel further confirmed that the very first time the service charge was disclosed to the customer came only after the customer had selected the quantity and type of tickets:

> Q: And the first time that service charge was ever disclosed to the customer would have been here at Figure 17, right, in the purchase flow?
>
> A: Yes.
>
> Q: So the service charge would have been disclosed after the user had selected the quantity and type of tickets he or she wants to purchase, right?
>
> A: Yes.

*Id.* at 27:6–17.

Critically, this uniform practice was not a technological necessity. Reading conceded it was "not" "technologically impossible" to display the total, fee-inclusive price up front, and on March 27, 2024—only after this lawsuit was filed—Reading in fact modified the website to do exactly that. *Id.* at 38:12–23; 32:19–33:17; Ex. 3, Defendant's Second Supplemental Interrogatory

[2] Defendant's Rule 30(b)(6) designee was not certain as to the precise date the website was modified and testified that it occurred at some point in April, May, or June 2024. Ex. 2, Goeddel Dep. at 32:19-33:4. After the deposition, Defendant provided supplemental interrogatory responses which provided the precise date of March 27, 2024.

Response to No. 11 (Reading "amended its website on March 27, 2024"). Every consumer who purchased a ticket online to an Angelika Film Center in New York during the class period was subjected to the same purchase flow, the same belated fee disclosure, and the same overcharge.

Accordingly, Plaintiff seeks to certify the following Class pursuant to Rule 23:

> All individuals in the United States who purchased one or more tickets online to an Angelika Film Center location in New York State from August 29, 2022 through March 26, 2024, and paid a service charge (the "Class").

As Judge Rakoff recently recognized, a plaintiff can "easily satisf[y] all the elements for class certification under Federal Rule of Civil Procedure 23" in cases where a defendant uniformly presents and charges transaction fees on computer screens in a manner that allegedly violates the law. *Polvay v. FCTI, Inc.*, 713 F. Supp. 3d 1, 10 (S.D.N.Y. 2024) (reaffirming grant of class certification for consumers that paid ATM fees on a "Continue/Cancel" screen which uniformly presented the fees in an allegedly deceptive manner). Here, as in other similar cases where classes have been certified, Defendant "points to nothing in the record to explain why the plaintiffs' core theory — that [Defendant] charged [plaintiffs] excessive … fees without adequately disclosing them — is not shared by both class representatives and the proposed class." *Henderson v. Bank of New York Mellon, N.A.*, 332 F. Supp. 3d 419, 427 (D. Mass. 2018). And the only ACAL case to reach a decision on contested class certification was certified. *See Cammayo v. 1and8, Inc.*, Index No. 150173/2024 at NYSCEF No. 92 (N.Y. Sup. Ct., Richmond Cnty. Apr. 22, 2025), *clarified by Cammayo v. 1and8, Inc.*, 2025 WL 1713287, at *3–4 (N.Y. Sup. Ct., Richmond Cnty. June 12, 2025).

Accordingly, Plaintiff's proposed Class should be certified, Plaintiff should be appointed as the Class Representative, and Plaintiff's counsel — Philip L. Fraietta, Alec M. Leslie, and Stefan

Bogdanovich of Bursor & Fisher, P.A. — should be appointed Class Counsel to represent the Class.

## FACTUAL BACKGROUND

### A. Reading Failed To Display The Total Cost Of Its Tickets, Inclusive Of The Service Charge, When The Price Was First Displayed Throughout The Class Period

Reading is, in its own words, is "primarily a cinema company" that owns and operates movie theaters throughout the United States under several brands, including the Angelika Film Center. Ex. 2, Goeddel Dep. at 13:5–10; 13:14–16. Reading operates three Angelika Film Center locations in New York, all located in New York City. *Id.* at 14:10–18. During the class period, consumers purchased tickets to those locations through the Angelika Film Center website, www.angelikafilmcenter.com. Mr. Goeddel, who has served as Reading's Chief Information Officer since 2018 and is responsible "for everything technology related in all of our business units," including "the presentation of the Angelika Film Center website," testified at length regarding the uniform purchase flow. *Id.* at 15:2–18.

Mr. Goeddel confirmed that the figures attached to the operative complaint accurately reflect the Angelika Film Center purchase flow. A consumer who selected "Get Tickets" on the homepage was directed to a page where the consumer chose a date and showtime, and was then directed to a page—Figure 16-A of the Complaint—at which the consumer selected the type and quantity of tickets. *Id.* at 22:18–25:24. At that point, the website displayed a price for the tickets. For example, $18 was displayed as the price for a general admission ticket to a January 17, 2024 screening of "Oppenheimer," but that displayed price did not include the mandatory service charge:

> Q: Yet the page still displays a price for the tickets and it displays a price of $18 for general admission tickets, right?

A: Yes.

Q: But the price is actually $20.19, isn't it?

A: This particular case, yes, it will be if we can satisfy the request.

*Id.* at 36:21–37:4.

The mandatory service charge was disclosed for the first time only later in the purchase flow, at Figure 17 of the Complaint, *after* the consumer had already selected the type and quantity of tickets:

Q: Figure 17 now represents a total price of $40.38, rather than the $36 we looked at earlier. Do you see that?

A: Yes.

Q: And what accounts for the difference?

A: Service charge.

*Id.* at 26:19–25. Mr. Goeddel confirmed that the displayed price was never a price that any consumer would actually have paid for that showing:

Q: Was there any way that a user could have purchased a ticket for $18 to this particular showing of "Oppenheimer" on January 17, 2024?

A: I mean if the seats were there, no.

*Id.* at 37:17–38:3.

Reading admits that the presentation of its service charge was uniform. In its sworn interrogatory responses, Reading represented that "Reading's presentation of its service charge was consistent from August 29, 2022 through the date of the filing of the complaint in this case." *Id.* at 34:3–8 (quoting Ex. 3, Defendant's Second Supplemental Responses to Plaintiff's First Set of Interrogatories, No. 11). Mr. Goeddel confirmed that this meant the service charge "was displayed in the way that it was displayed in the complaint from August 29, 2022 until the date of

the complaint." *Id.* at 34:19–22. And the practice continued in identical fashion until Reading modified the website on March 27, 2024. *See* Ex. 3, Defendant's Second Supplemental Interrogatory Response to No. 11 (Reading "amended its website on March 27, 2024 to display the service fee on the screen when it first shows the type of ticket (general, child, or senior) that may be purchased"); Ex. 2, Goeddel Dep. at 35:2–12. While the amount of the service charge varied over time—$1.89 beginning August 29, 2022; $1.99 beginning April 3, 2023; and $2.19 beginning January 2, 2024—the manner of its belated disclosure never changed. *Id.* at 57:4–15; 31:3–13.

That the violation was avoidable is beyond dispute. Reading conceded it was "not" "technologically impossible to make the website display" the total, fee-inclusive price up front. Indeed, since March 27, 2024, the website "now displays the price in that manner … inclusive of the service fee." *Id.* at 38:12–23. Reading made that change only after Plaintiff filed this lawsuit in February 2024. *Id.* at 32:19–33:17.

Remarkably, Mr. Goeddel admitted that Reading's service charge was, in his words, a "junk fee":

> Q: You used the term "junk fees." What do you mean by "junk fees?"
>
> A: Ancillary fees, service fees.
>
> Q: So the service charges that we've been talking about today, are those junk fees as you used the term?
>
> A: Yeah.

*Id.* at 41:21-42:3.

**B. Plaintiff's Experience**

Plaintiff's experience was typical of every consumer who purchased a ticket online to an Angelika Film Center in New York during the class period. Like every Class member, Plaintiff

was presented with a displayed ticket price that did not include the mandatory service charge when she first selected the type and quantity of tickets she wished to purchase, and the service charge was disclosed to her for the first time only later in the purchase flow, after she had committed to a ticket type and quantity. Berryman Decl. ¶¶ 3–5. Plaintiff was injured in precisely the same manner as the absent Class members: she paid a mandatory service charge that was not disclosed in the ticket listing prior to the ticket being selected for purchase, as required by ACAL § 25.07(4). *Id.* ¶ 6. Plaintiff confirmed these facts under oath at her deposition, testifying that she purchased a ticket on the Angelika Film Center website on December 2, 2023, that she paid a service charge of $2.19 per ticket, and that the service charge "was not included in the price of the ticket at the time of selecting it to purchase." Ex. 4, Deposition Transcript of Haley Berryman ("Berryman Dep.") at 25:22–26:2; 28:6–7; 42:14–15; 46:18–20.

## LEGAL STANDARD

Class actions are an essential tool for adjudicating cases involving many small claims that are not economically feasible to prosecute individually. In drafting Rule 23, "the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997). Class actions give voice to plaintiffs who "would have no realistic day in court if a class action were not available." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).

To qualify for certification, Plaintiff must demonstrate by a preponderance of the evidence that the putative class action meets each of the four requirements of Rule 23(a), and also satisfies at least one of the categories provided in Rule 23(b). *See In re Visa Check / MasterMoney Antitrust Litig.*, 280 F.3d 124, 132–33 (2d Cir. 2001). The Court must conduct a "rigorous analysis," which

may require it to "probe behind the pleadings before coming to rest on the certification question." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). However, "[t]he Second Circuit has emphasized that Rule 23 should be 'given liberal rather than restrictive construction.'" *Gortat v. Capala Bros., Inc.*, 257 F.R.D. 353, 361 (E.D.N.Y. 2009) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)). Indeed, "it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification." *Id.* at 361–62. Any doubt as to the propriety of certification should be resolved in favor of certifying the class. *See Marisol A.*, 126 F.3d at 377.

Cases where a defendant uniformly presents and charges transaction fees on computer screens in a manner that allegedly violates the law can "easily satisf[y] all the elements for class certification under Federal Rule of Civil Procedure 23." *Polvay*, 713 F. Supp. 3d at 10.

## ARGUMENT

### I. The Requirements Of Rule 23(a) Are Readily Met

Rule 23(a) sets forth four prerequisites for certification: numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a).

#### A. Numerosity Is Satisfied

Generally, a presumption of numerosity attaches to classes of more than 40 in the Second Circuit. *Consol. Rail Corp. v. Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). This case easily satisfies the numerosity requirement. Reading's own transactional data, produced in this litigation, reflects at least [redacted] online transactions, [redacted] tickets sold, and [redacted] unique customers at the three Angelika Film Center locations in New York during the class period of August 29, 2022 through March 26, 2024. *See* Ex. 5, RII001777. Mr. Goeddel confirmed at his deposition that Reading's transactional data records for each online purchase contain the theater location, transaction date and timestamp, customer email address, total transaction value, total service fee,

and number of tickets, and that the number of unique customers can be ascertained from the email addresses reflected in that data. Goeddel Dep. at 55:7–56:22. This easily satisfies numerosity.

**B. Commonality Is Satisfied**

As the Supreme Court held in *Dukes*, "[c]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury. That common contention, moreover, must be of such a nature that it is capable of classwide resolution, which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551. Commonality "is satisfied if there is a common issue that 'drive[s] the resolution of the litigation.'" *Sykes v. Mel S. Harris and Associates LLC*, 780 F.3d 70, 84 (2d Cir. 2015). Indeed, "[e]ven a single question of law or fact common to the members of the class will satisfy the commonality requirement." *Dukes*, 131 S. Ct. at 2562.

Here, there are common questions the truth or falsity of which will determine each Class member's claim, namely: (a) whether Reading failed to disclose the total cost of the ticket, inclusive of all ancillary fees, prior to the ticket being selected for purchase in violation of ACAL § 25.07(4); and (b) whether the displayed price of Reading's tickets increased during the purchase process in violation of ACAL § 25.07(4). If Reading violated the statute, then every Class member's rights were violated in the exact same manner, and damages can be precisely calculated for each Class member. Mr. Goeddel confirmed the uniformity of the practice, testifying that Reading's "presentation of its service charge was consistent from August 29, 2022 through the date of the filing of the complaint," and that the service charge "was not displayed until after an individual had selected the type and quantity of tickets." Goeddel Dep. at 34:3–8; 35:6–12.

Likewise, in *Polvay*, Judge Rakoff held that commonality was satisfied where "plaintiff has identified numerous questions of law and fact … [that] are subject to common proof and arise

from the same course of conduct, to wit, defendant's uniform use of the 'Continue/Cancel Prompt' screen at its ATMs." 713 F. Supp. 3d at 10. "Courts considering similar claims of unlawful payment policies routinely certify classes based on evidence of a common policy." *Pichardo v. Carmine's Broadway Feast Inc.*, 2016 WL 5338551, at *3 (S.D.N.Y. Sept. 26, 2016); *Cassese v. Washington Mut., Inc.*, 255 F.R.D. 89, 96 (E.D.N.Y. 2008) (commonality satisfied where borrowers challenged legality of certain fees). Plaintiff has therefore met the commonality requirement.

### C. Typicality Is Satisfied

Rule 23(a)(3) requires Plaintiff's claims to be "typical" of the class. Fed. R. Civ. P. 23(a)(3). "The typicality requirement is not demanding." *Fogarazzao v. Lehman Bros., Inc.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005). Typicality is satisfied "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class … the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Id.* at 936–37; *see also Green v. Wolf Corp.*, 406 F.2d 291, 300 (2d Cir. 1968).

Here, Plaintiff alleges a common pattern of wrongdoing: Reading's consistent failure to disclose the total cost of the ticket, inclusive of all ancillary fees, prior to the ticket being selected for purchase, from August 29, 2022 until Reading modified its website on March 27, 2024. Every online ticket sold by Reading for an Angelika Film Center in New York during the class period was presented in the same way—it did not state the total, fee-inclusive cost prior to the ticket being selected for purchase. *See* Goeddel Dep. at 34:3–8; 35:6–12; 37:17–38:3. Plaintiff was injured in

the same manner as the putative Class members because she paid an undisclosed, mandatory service charge. Plaintiff confirmed as much at her deposition, testifying that she "paid an unlawful fee" that "was not included in the price of the ticket at the time of selecting it to purchase." Berryman Dep. at 28:6–7; 46:18–20. Plaintiff's claims are therefore typical of the Class. As in *Polvay*, Plaintiff's claim is typical because, "like all other class members," she "was faced with the same allegedly deceptive … screen." 713 F. Supp. 3d at 11.

**D. Adequacy Of Representation Is Satisfied**

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[A]dequacy of representation entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced, and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Both factors are met here.

*1. Plaintiff's Interests Do Not Conflict With Interests Of The Class*

Neither Plaintiff nor her counsel have any interests antagonistic to absent Class members. Berryman Decl. ¶ 11. Plaintiff, like each absent Class member, has a strong interest in proving Reading's common course of conduct, establishing its unlawfulness, and obtaining redress. *See Borden v. 400 E. 55th St., Assoc., L.P.*, 24 N.Y.3d 382, 399–400 (2014) (adequacy met where "no substantiated conflicts" between a representative and class members). Plaintiff further confirmed at her deposition that she understands and embraces her role as Class representative. She testified that she seeks "the damages that are owed under the law for the class [she is] representing," that she understood the statute to provide "$50 per … ticket," and that she purchased her ticket because she wanted to see a movie, not to hunt for legal violations. Berryman Dep. at 94:20–21; 96:15–17; 101:17–23.

When Reading's counsel pressed Ms. Berryman on her willingness to shoulder the burdens of this litigation, she testified:

> Q: And that $2 Charge was important enough to cause you to file the complaint, correct?
>
> A: It was an unlawful fee.
>
> Q: And because of that, you're willing to subject yourself to discovery and sit here for this deposition; correct?
>
> A: I sit here as a representative for all the people who were wrongly charged and deserve compensation.

*Id.* at 43:17–44:2.

> Q: Okay. You're willing to go to trial and sit before a jury because of this $2 service charge. Is that correct?
>
> A: Yes.
>
> Q: It's fair to say that it's that important to you?
>
> A: Yes, as the representative of the class.

*Id.* at 46:21–47:4.

*2. Plaintiff's Counsel Are Qualified*

Plaintiff's counsel, Philip L. Fraietta, Alec M. Leslie, and Stefan Bogdanovich of Bursor & Fisher, P.A., are class action lawyers with extensive experience litigating consumer claims, including ACAL § 25.07(4) claims and illegal-fee claims generally. *See* Ex. 6, Bursor & Fisher, P.A. Firm Resume.[3] Bursor & Fisher has represented clients in multiple class actions against

[3] "The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in five class action jury trials since 2008." *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 566 (S.D.N.Y. 2014) (Rakoff, J.).

online ticket sellers whose practices violate ACAL § 25.07(4) by charging hidden service fees without disclosing them prior to the ticket being selected for purchase, and has achieved sizable class settlements in this area of the law. *See, e.g.*, *Presson v. Alamo Intermediate II Holdings, LLC*, 2025 WL 3088978, at *2 (S.D.N.Y. Nov. 5, 2025) ($7.075 million class settlement); *Jones v. Regal Cinemas, Inc.*, Case No. 1:23-cv-11145, ECF No. 42 (S.D.N.Y. Mar. 6, 2025) ($2.5 million class settlement); *Norcross v. Tishman Speyer Properties, L.P.*, Case No. 1:23-cv-11153, ECF No. 36 (S.D.N.Y. Aug. 16, 2024) ($1.1 million class settlement). Adequacy is satisfied.

### E. The Class May Be Objectively Ascertained

In addition to the four cornerstones of Rule 23(a), the Second Circuit recognizes an implied requirement of ascertainability, which "requires only that a class be defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras Securities*, 862 F.3d 250, 264 (2d Cir. 2017). The standard "is 'not demanding'" and is "designed only to prevent the certification of a class whose membership is truly indeterminable." *Ebin*, 297 F.R.D. at 567 (quoting *Gortat*, 2010 WL 1423018, at *2).

Here, Class members can be identified by reference to objective criteria, namely, whether they purchased tickets online to an Angelika Film Center location in New York during the class period. There is nothing subjective about the Class definition. Reading collected and produced detailed transactional data identifying each online purchase, including the theater location ("SiteName"), the transaction date and timestamp, the customer's email address, the total transaction value, the total service fee, and the number of tickets. Goeddel Dep. at 51:6–54:4. As Mr. Goeddel confirmed, the data identifies [redacted] unique customers based on their email addresses. Ex. 5, RII001777. That data renders every Class member readily identifiable.

## II. The Proposed Classes Satisfy The Requirements Of Rule 23(b)(3)

Rule 23(b)(3) authorizes class certification where "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Both requirements are met here.

### A. Common Questions Of Law Or Fact Predominate

"Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002). Rule 23(b)(3) calls only for "a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013). The predominance inquiry "tests whether proposed class actions are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623–24.

To prove her ACAL claim, Plaintiff must show that Reading failed to "disclose the total cost of the ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket," in the "ticket listing prior to the ticket being selected for purchase." ACAL § 25.07(4). Here, the legal and factual issues do not require individualized determinations and can be resolved through generalized proof. The critical questions that will drive the resolution of this litigation—whether Reading failed to disclose the total cost of the ticket, inclusive of the service charge, prior to the ticket being selected for purchase, and whether the displayed price increased during the purchase process—are common to every Class member. It is undisputed that Reading's website purchase

flow and presentation of the service charge did not change during the class period. Goeddel Dep. at 34:3–8; 35:2–12; Ex. 3, Defendant's Second Supplemental Interrogatory Response to No. 11 (Reading's "checkout flow on its website was uniform during the proposed class period and as alleged in Plaintiff's Complaint"). Thus, every single Class member was subjected to the same alleged violation of ACAL § 25.07(4). *See Polvay*, 713 F. Supp. 3d at 12.

**B. Class-Wide Relief Can Be Proved On A Common Basis**

"All that is required at class certification is that the plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability." *San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*, 349 F.R.D. 606, 611 (S.D.N.Y. 2025) (Subramanian, J.) (quoting *Sykes*, 780 F.3d at 88). Here, this is readily satisfied because the ACAL provides for statutory damages of fifty dollars per violation. *See* ACAL § 25.33. "It is not disputed that statutory damages … can be assessed on the basis of common proof, as they are capped at $50." *Sykes*, 780 F.3d at 87. Applied here, statutory damages can be calculated on a classwide basis from Reading's own transactional data: the [redacted] class-period transactions reflected in that data, multiplied by the $50 statutory minimum, yield aggregate statutory damages of at least $[redacted]. *See* Ex. 5, RII001777.

Alternatively, actual damages are easily calculated. Plaintiff's theory is that because Reading failed to comply with ACAL § 25.07(4), the service charges it collected were unlawful. Actual damages therefore equate to the amount of service fees Class members paid during the class period, a sum that Reading's own data already aggregates. Reading's transactional data reflects at least $[redacted] in service fees collected on online ticket sales to its New York Angelika Film Center locations during the class period. *See* Ex. 5, RII001777. *See also Cassese*, 255 F.R.D. at 97 ("[T]he common questions regarding legality of the fees assessed clearly predominate over any

individual questions."). As such, Plaintiff's damages model "matches [her] theory of liability" and "individualized damages issues will not predominate." *See Carpenters Pension Trust Fund v. Barclays PLC*, 2015 WL 5000849, at *21 (S.D.N.Y. Aug. 20, 2015).

**C. Class Litigation Is Superior To Other Methods Of Adjudication**

Finally, a class action is the superior method of adjudication. Rule 23(b)(3) provides four factors for the Court's consideration: the class members' interest in individually controlling separate actions; the extent of any litigation already commenced; the desirability of concentrating the litigation in the particular forum; and the likely difficulties in managing the class action. Fed. R. Civ. P. 23(b)(3). All four favor class treatment here. It would cost Class members far more to litigate an individual case than they could recover, given that each ticket carried a service charge of only $1.89 to $2.19. Where proceeding individually would be prohibitive due to the minimal recovery, "the class action device is frequently superior to individual actions." *See Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004). Moreover, this case is manageable as a class action because liability will be established predominantly through common classwide proof, as described above.

As Judge Rakoff noted in *Polvay*, "given that each class member's individual claim is of low value, a class action is not only the superior mechanism, but is likely the only mechanism through which it would be economically feasible for class members to maintain their claims." 713 F. Supp. 3d at 12. The same is true here.

**<u>CONCLUSION</u>**

For the reasons set forth above, Plaintiff respectfully requests that the Court grant her motion to certify the Class, appoint Plaintiff as representative of the Class, appoint Philip L.

Fraietta, Alec M. Leslie, and Stefan Bogdanovich of Bursor & Fisher, P.A. as Class Counsel, and grant such other, further, or different relief as the Court deems just and proper.

Dated: June 15, 2026
White Plains, New York

**BURSOR & FISHER, P.A.**

By: *__/s/ Philip L. Fraietta__*
Philip L. Fraietta

Philip L. Fraietta
50 Main Street, Suite 475
White Plains NY 10606
Telephone: 914-874-0708
Facsimile: (914) 206-3656
Email: pfraietta@bursor.com

Alec M. Leslie
1330 Avenue of the Americas, 32nd Floor
New York, NY 100019
Telephone: (646) 837-7126
Facsimile: (212) 989-9163
E-Mail: aleslie@bursor.com

Stefan Bogdanovich
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: sbogdanovich@bursor.com

*Proposed Class Counsel*

**CERTIFICATE OF COMPLIANCE**

I, Philip. L. Fraietta, hereby certify that this brief contains 4,891 words.

*/s/ Philip L. Fraietta*
Philip L. Fraietta