**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HALEY BERRYMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>READING INTERNATIONAL, INC.,<br><br>Defendant. | Case No.: 1:24-cv-00750-PAE |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT READING INTERNATIONAL, INC.'S OPPOSITION TO**
**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

**GREENBERG TRAURIG, LLP**
One Vanderbilt Avenue
New York, New York 10017
Tel. (212) 801-9200
*Attorneys for Defendant*
*Reading International, Inc.*

# TABLE OF CONTENTS


**Pages**

I. INTRODUCTION ..... 1

II. RELEVANT ALLEGATIONS AND FACTS ..... 3

- A. Plaintiff's Allegations ..... 3
- B. Defendant's Purchase Process ..... 4
- C. Plaintiff's Purchase History and Knowledge of Fees ..... 6
- D. Putative Class Members Include Repeat Customers ..... 9

III. LEGAL STANDARD ..... 9

IV. ARGUMENT ..... 10

- A. Plaintiff Has Not Shown Numerosity ..... 10
- B. Plaintiff Has Not Shown Commonality ..... 11
- C. Plaintiff Has Not Demonstrated Typicality ..... 16
- D. Plaintiff is an Inadequate Class Representative ..... 18
- E. A Class Action is Not Superior Because Individual Issues Predominate ..... 20

V. CONCLUSION ..... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Brice Yingling v. eBay, Inc.*,
No. C 09-01733 JW, 2010 WL 11575128 (N.D. Cal. July 16, 2010) ....................................15

*Califano v. Yamasaki*,
442 U.S. 682 (1979)....................................................................................................9

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)......................................................................................................9

*Consol. Rail Corp. v. Hyde Park*,
47 F.3d 473 (2d Cir. 1995)..........................................................................................10

*Cromer Finance Ltd. v. Berger*,
205 F.R.D. 113 (S.D.N.Y. 2001) ..................................................................................19

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006).........................................................................................18

*Emilio v. Sprint Spectrum L.P.*,
No. 11-CV-3041 (JPO), 2017 WL 3208535 (S.D.N.Y. July 27, 2017)..................................16

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
903 F.2d 176 (2d Cir. 1990).........................................................................................18

*Howard v. Cook Cnty. Sherriff's Off.*,
989 F.3d 587 (7th Cir. 2021) .......................................................................................16

*Kline v. Wolf*,
702 F.2d 400 (2d Cir. 1983).........................................................................................19

*Mazzei v. Money Store*,
288 F.R.D. 45 (S.D.N.Y. 2012), *rev'd* on other grounds 308 F.R.D. 92
(S.D.N.Y. 2015) .........................................................................................................15

*Miles v. Merrill Lynch and Co.*,
471 F.3d 24 (2d Cir. 2006)............................................................................................9

*Newman v. RCN Telecom Servs., Inc.*,
238 F.R.D. 57 (S.D.N.Y. 2006) ....................................................................................17

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014) .......................................................................................17

*Savino v. Computer Credit*,
164 F.3d 81 (2d Cir. 1998)...........................................................................................19

*Spagnola v. Chubb Corp.*,
264 F.R.D. 76 (S.D.N.Y. 2010) ....................................................................................20

*Summerville v. Gotham Comedy Foundation, Inc.*,
765 F. Supp. 3d 293 (S.D.N.Y. 2025)....................13

*Vaccariello v. XM Satellite Radio, Inc.*,
295 F.R.D. 62 (S.D.N.Y. 2013)....................16

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)....................9, 11

*Weaver v. University of Cincinnati*,
970 F.2d 1523 (6th Cir. 1992)....................19

**State Cases**

*Cammayo v. 1AND8, Inc.*,
Index No. 150173/2024, 2025 WL 1713287
(N.Y. Sup. Ct. Richmond Cnty. June 12, 2025)....................13

*Curanaj v. Tao Group Operating LLC*,
2024 NY Slip Op. 34638(U), Index No. 56152/2024, 2024 WL 5456192
(N.Y. Sup. Ct. Westchester Cnty. July 25, 2024)....................14

*Dillon v. U-A Columbia Cablevision of Westchester, Inc.*,
100 N.Y.2d 525 (N.Y. 2003)....................18

*Dowd v. Alliance Mortgage Co.*,
74 A.D.3d 867 (2d Dep't 2010)....................14, 15

*Smart Professional Photocopy Corp. v. Childers-Sims*,
850 So.2d 1245 (Ala. 2002)....................20

*Solomon v. Bell Atl. Corp.*,
9 A.D.3d 49 (1st Dep't 2004)....................15, 16

**Rules**

Fed. R. Civ. P. 23(a)....................9

Fed. R. Civ. P. 23(a)(1)....................10

Fed. R. Civ. P. 23(a)(2)....................11

Fed. R. Civ. P. 23(a)(4)....................18

# I. INTRODUCTION

Plaintiff Haley Berryman ("Plaintiff") alleges that Defendant Reading International Inc. ("Defendant") violated New York Arts and Cultural Affairs Law ("NY ACAL") § 25.07(4) (the "NY Ticketing Statute") "by quoting movie ticket purchasers on its website a fee-less price, only to later ambush them with a $2.19 service charge per ticket at checkout." First Amendment Complaint ("FAC") ¶ 7. In her Motion for Class Certification (ECF Nos. 92-97), she seeks to certify a class consisting of "All individuals in the United States who purchased one or more tickets online to an Angelika Film Center location in New York State from August 29, 2022 through March 26, 2024, and paid a service charge (the 'Class')." Motion at 3. Plaintiff's motion is premised on her "core theory" that Defendant charged an excessive fee (the service charge) without adequate disclosure. (*Id.*) That theory falls apart when presented with the facts of this case. Indeed, class certification is inappropriate in such "disclosure" related cases where individualized inquires regarding the disclosure, knowledge of the fee, or lack thereof, predominate. That is the case here.

Plaintiff's certification motion assumes that every online customer was injured in the same way simply because every customer saw the same website flow. But the record shows that is not true. Haley Berryman was a repeat purchaser, knew service fees existed, viewed them as a cost of doing business, continued buying tickets after suing, admitted the service charge was clearly displayed before payment, and cannot identify a single other person who was tricked or ambushed. Those individualized facts are not side issues; they go directly to injury, voluntary payment, typicality, adequacy, and predominance.

During her deposition, Plaintiff confirmed her awareness of all relevant facts, demonstrating there was no "lack of disclosure" as to her or before she made her purchase:

- Plaintiff learned of the NY Ticketing Statute upon its passage and recalled news about it.
- Plaintiff agreed that Defendant provided its service charge on the seat selection screen, before any payment information was required to be entered.
- Plaintiff agreed that Defendant also conspicuously and clearly provided the service charge on its order confirmation screen, just above the button the customer was required to press to continue their purchase and before entering any payment information.
- Plaintiff understood a service charge was applied (or at the very least was aware one might be applied) and that it was the "cost of doing business."
- Plaintiff agreed that Defendant was not trying to trick her or hide anything from her.
- Plaintiff continued to purchase tickets from Defendant's website even after filing the complaint, because her purchase decision was based on her desire to see a movie regardless of the payment of a service charge.

Stated simply, Plaintiff's *dispute* in this case is not the collection of a service fee, but instead is solely with the placement of the charge on the seat selection screen compared to the ticket-type selection screen. To that point, she does not dispute the clear placement of the service charge on either the seat selection screen or the order confirmation screen before any payment information is entered.

***And it is likely because of the clear nature of Defendant's display of its service charge that Plaintiff is not aware of any other potential plaintiff in her purported class action that was allegedly "tricked" or "ambushed" by Defendant.*** Berryman Dep. (ECF No. 94-4) at 92:12-20. That is because Defendant does not trick or ambush its customers. In short, Defendant clearly and conspicuously notified consumers of the service charge, and in fact did so multiple times, before any payment information was entered and before the tickets were purchased. Plaintiff herself

agrees. With these factual difficulties in her own case, it is clear that no common question exists, much less that any common question predominates over individual inquiries regarding each putative class member's purchase history and potential knowledge of the service fee before their purchase.

Plaintiff's motion tries to convert an allegedly uniform website flow into automatic classwide injury. But Rule 23 does not permit that shortcut. The record shows that whether any customer was injured, misled, or entitled to recover depends on individualized facts, including prior purchases, prior exposure to the service fee, knowledge of the fee, continued purchases after disclosure, and whether the fee affected the purchase decision at all. Plaintiff herself proves the problem: she was a repeat customer, had paid service fees before, viewed them as a cost of doing business, knew to be alert for such fees, admitted the fee was displayed before payment, and kept buying tickets even after filing suit. A class cannot be certified on the fiction that every absent customer stands in the same position.

## II. RELEVANT ALLEGATIONS AND FACTS

### A. PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that, under the NY Ticketing Statute, every entertainment operator must disclose the total cost of a ticket, inclusive of all ancillary fees, in a clear and conspicuous manner, which must be provided "prior to" the ticket being selected for purchase. Plaintiff's FAC further alleges that the "ticket purchasing process begins once a consumer visits a ticket marketplace and first sees a list of seat prices." FAC ¶ 79.

Plaintiff alleges that, at AngelikaFilmCenter.com, "the purchase process begins" "[a]fter a user selects a showtime" and "he is prompted to select the number and type of tickets." *Id.* ¶ 82. But, according to Plaintiff, "[a]fter a consumer selects the type and number of tickets she wishes

to purchase of the movie she selected, at the theatre she selected, and for the showtime she selected, she is brought to a screen requiring her to select her seats," which then for the first time displays "Defendant's $2.19 'service charge' per ticket." *Id.* ¶ 83.

As Plaintiff notes, the NY Ticketing Statute became effective on August 29, 2022. *Id.* ¶ 78. Plaintiff alleges that, thereafter, on December 2, 2023, she purchased tickets to a movie screening at Defendant's theater but "was tricked into paying Defendant's 'service charge' even though this charge was not disclosed to her prior to her ticket selection." *Id.* ¶ 89.

### B. DEFENDANT'S PURCHASE PROCESS

A customer visiting Defendant's website would face the following purchase process flow:

***First***, the customer selects a movie and clicks to "Get Tickets." *Id.* ¶ 80 (Figure 14).

***Second***, a customer chooses the date and possible showtime. *Id.* ¶ 81 (Figure 15).

***Third***, after selecting the movie, the customer selects the type of ticket they want to purchase and quantity, i.e., whether a general reservation, child, or senior. On this screen, the price of the ticket type is shown. *Id.* ¶ 82 (Figure 16-A). The customer also identifies whether they have an account or would be proceeding through the guest checkout process. *Id.* (Figure 16-B).

***Fourth***, the customer selects their seats and, and in so doing is shown available and sold seats. *Id.* ¶ 83 (Figure 17). Defendant prominently displayed the service charge on this screen:




***Fifth***, after determining whether there are seats available (and if the customer wanted to see the movie subject to the seat availability), the customer is brought to an order confirmation page. *Id.* ¶ 84 (Figure 18). The order confirmation page again displays the total price, just above the button that must be clicked to continue to the payment screen:




***Sixth***, the customer enters their payment information and completes their purchase. Defendant continues to show the full ticket price and "Total Balance." *Id.* ¶ 84 (Figure 19).

## C. PLAINTIFF'S PURCHASE HISTORY AND KNOWLEDGE OF FEES

Plaintiff created an Angelika Film Center account on October 5, 2022. *Id.* ¶ 86; Berryman Dep. at 37:21-38:23. While testifying that she did not exactly recall purchasing tickets at the time, she testified that she would have likely created the account for that purpose. Berryman Dep. at 38:3-7. And she further testified that she had made multiple purchases of tickets at Angelika Film Center prior to her December 2, 2023 purchase identified in FAC ¶ 89. *Id.* at 38:12-23.

Important here, ***Plaintiff admitted to knowledge of service fees before her December 2, 2023 purchase, which she viewed as a "cost of doing business***." *Id.* at 40:13-22 (emphasis added). Plaintiff also was aware of the NY Ticketing Statute, as she recalled discussion of the law in the

news at the time of its enactment. *Id.* at 22:3-23:12. As a result of the law, Plaintiff was "more cognizant of potentially hidden fees when conducting transactions." *Id.* at 23:17-21.

In or around November 2023, Plaintiff came across a social media advertisement (likely Instagram) by Bursor & Fisher, P.A. (her counsel here) seeking plaintiffs against Defendant for purported violation of the Video Privacy Protection Act ("VPPA"). *Id.* at 13:19-14:21, 16:22-18:17, 98:4-6. Plaintiff clicked a link on the advertisement and filled out and submitted Bursor & Fisher's solicitation form. *Id.* at 17:19-18:23.

On December 2, 2023, Plaintiff visited Defendant's Angelika Film Center website to purchase tickets. *Id.* at 26:9-13. And she testified she was aware ***before*** her December 2, 2023 purchase that there might be an issue with the presentment of service fees and that she would need to review the service fee on Defendant's website. *Id.* at 29:22-30:3. Plaintiff testified that, during the particular December 2, 2023 transaction, she did not recall one way or the other if she saw a charge—despite being on notice—and only gave it mind in January 2024 when she met with counsel at Bursor & Fisher. *Id.* at 31:20-32:9. When asked about her conversation, her counsel objected her on the basis of privilege and directed her not to answer.

Nevertheless, and even after filing her complaint here, Plaintiff continued to buy tickets from Defendant—and paid no attention to whether she paid a service fee or not. *Id.* at 33:2-17. The reason, according to Plaintiff, is that she simply wanted to see a movie. *Id.* at 33:24-6 ("Q: So you saw an ad in November 2023 regarding Angelika. You purchased a ticket December 2nd. You spoke with Counsel and filed a complaint alleging that Angelika's website did not properly disclose a service charge. You later purchased tickets, again from Angelika. But it wasn't material to you whether or not a service charge was being applied during those later transactions? A: I wanted to see a movie at a certain time.").

As Plaintiff testified during her deposition, she has no complaint with the payment of the fee at all—it is simply a post-hoc argument (after she met with counsel) that the fee should have been disclosed earlier: "regardless of if [a customer] were fine to pay - - and I can't speak to every consumer; I can only speak to myself. Regardless, if they were fine to pay the fee, it was still unlawfully charged." *Id.* at 46:10-15. That being said, Plaintiff would not say that a ticket is selected only when a price is first shown. (*Id.* at 58:11-59:13.) And her counsel directed her not to answer why *she* believed ticket selection occurred when the type of ticket was selected, compared to when she selected the specific seat for her ticket. *Id.* at 59:19-63:22.[1]

Even then, Plaintiff also agreed that she will review seat selection *before* deciding to buy a ticket. *Id.* at 68:16-70:18 (agreeing that she might not see the movie if her preferred seat is not available: Q: "Have you ever encountered the circumstance where you've wanted to go to a concert or sporting event and disliked the possible seat selections and then chosen not to buy that ticket? A: Sure."); *id.* at 70:2-7 (Q: "But if it's something you could just choose a different showtime, you might select a different showtime to see versus sitting in the front left row? A: I would say so, yes."). Tellingly, on the screen that she selected her seat—*and thus decided whether she would purchase a ticket*—she agreed that the service fee was clearly shown. *Id.* at 70:19-71:4. And on the next screen, when showing the order confirmation *before* any payment information was entered, ***she further agreed that the ticket price including the service fee was again clearly and conspicuously disclosed***. *Id.* at 72:19-74:24. And she agreed that, based on this clear disclosure,

[1] Plaintiff later was asked by her own counsel about conversations they had in January 2024 about the ticketing claim, which Plaintiff stated was the first time that the matter was discussed, contrasted to the Bursor & Fisher solicitation from November 2023 which referred to the VPPA claim. Berryman Dep. at 101:8-16. Because Plaintiff and her counsel opened the door to the substance of their conversation in January 2024, Defendant's counsel asked *who* first raised the ticketing statute claim. Here again, counsel instructed her not to answer. *Id.* at 102:6-24.

there was no "trick" or "hidden service charge." *Id.* ("Q: Do you think based on this screen that Angelika is trying to trick customers into paying a hidden service charge? [objection omitted] A: Not based on this screen.").

### D. PUTATIVE CLASS MEMBERS INCLUDE REPEAT CUSTOMERS

Plaintiff is not the only customer with multiple purchases and a long-standing relationship with Reading. Many of Defendant's customers are repeat customers who've purchased multiple tickets over the years. *See* ECF No. 94-5 (external drive).

## III. LEGAL STANDARD

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979). A putative class may be certified only if it satisfies the prerequisites of Rule 23 of the Federal Rules of Civil Procedure. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 33-34 (2013). This undertaking requires the trial court to conduct a "rigorous analysis" which may "overlap with the merits of the plaintiff's underlying claim." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). Additionally, to maintain a class action, the party seeking certification bears the burden of proof and must affirmatively demonstrate compliance with the rule. *Id.* at 350.

Rule 23 does not establish a pleading standard, but instead requires the plaintiff to prove, through evidentiary support, that the class satisfies all four prerequisites of Rule 23(a) (numerosity, commonality, typicality, and adequacy). *See Comcast*, 569 U.S. at 33; Fed. R. Civ. P. 23(a). Additionally, the plaintiff must prove that the action fits within at least one of the three categories set forth in Rule 23(b). *See Comcast*, 569 U.S. at 33. A standard of "some showing" that each of these requirements has been satisfied is inadequate for certification, as each must be affirmatively met. *Miles v. Merrill Lynch and Co.*, 471 F.3d 24, 27 (2d Cir. 2006).

## IV. ARGUMENT

The Court should deny Plaintiff's Motion because Plaintiff has not established any other potential plaintiff in her purported class that has allegedly been "tricked" or "ambushed" by Defendant's service fee, and the proposed class is rife with individualized factual and legal issues.

### A. Plaintiff Has Not Shown Numerosity

For numerosity to be met, the class must be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). In the Second Circuit, this requirement is generally met with a class of more than 40. *Consol. Rail Corp. v. Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). It is true that over 40 other people have purchased tickets from Defendant and paid a service fee during the relevant class period of August 29, 2022, through March 26, 2024. However, such a high-level inquiry misses the mark. The question is not whether 40 people have bought movie tickets from Defendant during the class period, but rather whether numerous other Reading customers were "tricked" or materially misled by Defendant's ticket sales practices—as the NY Ticketing Statute is a disclosure-focused statute. For this latter question, Plaintiff cannot identify a single other customer who claims that Defendant's ticket process "tricked" or "ambushed" them with a service fee. This is likely because of the clear and transparent display of Defendant's service charge, which even Plaintiff herself readily conceded.

Further, there are not grounds for even an *assumption* that numerous other plaintiffs were tricked or misled into paying Defendant's service charge. As Plaintiff's testimony made clear, Plaintiff was aware of the service fee charge, which she associated as simply a "cost of doing business" with Defendant, was aware of the NY Ticketing Statute because of news at the time of its enactment, and even continued to purchase tickets from Defendant *after knowing of the service charge*, and in fact, *after filing her suit here*. As Defendant's records demonstrate, numerous other of its customers are similarly repeat customers who would have been aware of the service fee

regardless of the screen on which it was placed. Stated simply, if Plaintiff cannot even claim that she was "tricked" or "ambushed" into paying the service fee, and she admitted in her deposition that she was not so "tricked," then she has no basis to bring a state-wide claim on behalf of other—unidentified—persons who were purportedly tricked where she does not identify any such person. And even assuming numerosity could potentially be established here, Plaintiff's transaction data proves only that customers bought tickets. Plaintiff cannot establish certification where the same transaction data shows nothing about which customers knew about the fee, accepted the fee, repeatedly paid the fee, or are subject to individualized defenses.

### B. PLAINTIFF HAS NOT SHOWN COMMONALITY

Rule 23(a)(2)'s commonality requirement necessitates the party seeking class certification to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). That common contention must be capable of resolution class-wide, meaning the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. Plaintiff offers two questions for which she claims the answer will determine each Class member's claim: (1) "whether Reading failed to disclose the total cost of the ticket, inclusive of all ancillary fees, prior to the ticket being selected for purchase"; and (2) "whether the displayed price of Reading's tickets increased during the purchase process." Motion at 9. However, neither of these questions are determinative or answer the proposed Plaintiff's class issue in one stroke because *when* a ticket is selected for purchase (and thereafter whether the ticket price increased *after* it was selected for purchase) is inherently individualized and not capable of class-wide resolution. Accordingly, the cases cited in Plaintiff's Motion focusing only on *collection* of a fee (Motion at 9-10) are easily distinguishable right out of the gate.

As Plaintiff testified when presented with multiple online articles containing consumer seat preferences, the vast majority of consumers purchase tickets *based on seat selection* (Berryman Dep. at 80:19-81:6; Ferrario Decl. **Exhibit A** (Berryman Dep. Exh. 2), **Exhibit B** (Berryman Dep. Exh. 3)), "[e]veryone's different" regarding their seat selection and ticket purchase decisions (*id.* at 82:11-21), and "some people, if a seat they like isn't available, [simply] won't buy that ticket" (*id.* at 83:13-18). She further agreed that "there are differing views and opinions on the seat selection and ticket purchasing process across individuals." *Id.* at 87:12-16. And she could not speak for anyone else or claim anyone else shared her view "when people believe they are buying a ticket." *Id.* at 88:11-17. Even when her counsel attempted to object, Plaintiff's counsel also agreed that "some individuals believe they purchased a ticket at [the] seat selection screen." *Id.* at 90:5-21 ("Yeah."). Contrary to Plaintiff's self-serving claim that her ticket was purchased when she selected ticket type (to which she refused to explain her reasoning on the basis of privilege), Defendant's representative testified that Defendant's perspective is that Defendant is not even sure if it has tickets to sell, based on seat availability, until the customer reaches the seat selection screen, and thus a ticket is not "selected" on its website until completion of the seat selection screen. Goeddel Dep. (ECF No. 94-2) at 47:7-25.

Setting this threshold issue aside, the proposed common questions are not capable of resolving the *determinative* issues in this case because liability turns in each case on non-common questions concerning each putative class member's knowledge and experience. Namely: what was each putative class member's knowledge or acceptance of payment of the service fee; whether putative class members were aware of the NY Ticketing Statute before making their purchase; whether putative class members had made prior purchases and *continued* to make purchases and continue to pay the service fee; and whether each putative class member's decision to purchase the

movie ticket was based on the service charge. For her part, Plaintiff admits she knew of the fee *prior to* at least some of her purchases and viewed it as a "cost of doing business." Berryman Dep. at 40:13-22. Even after filing her complaint here, in which she alleged the purported violation of the NY Ticketing Statute, Plaintiff continued to voluntarily pay the service fee by purchasing tickets through Defendant's website. *E.g.*, *id.* at 94:10-16. Worse still, she admitted that the purchase process and seat selection is inherently individualized and she could not speak to any other customer's view. And Plaintiff has not presented any expert testimony that would indicate these questions, including *when a ticket is selected for purchase*, is capable of class wide resolution.

The voluntary payment doctrine alone should defeat class certification and Plaintiff's claims. In Plaintiff's letter response to Defendants' request for permission to file a motion for class certification, Plaintiff argued that the voluntary payment doctrine does not apply to a NY Ticketing Statute claim. (ECF No. 100 at 3.) But the majority of cases that Plaintiff cited there addressed motions to dismiss, where the plaintiff challenged full disclosure and "the pleadings 'do not establish whether Plaintiffs knew or should have known that the product prices were' misleading" and thus "dismissal under voluntary payment doctrine [was] *premature*." *See Summerville v. Gotham Comedy Foundation, Inc.*, 765 F. Supp. 3d 293, 301 (S.D.N.Y. 2025). And the sole summary judgment case that Plaintiff misleadingly cites concerned a court's denial of a defendant's motion because "[t]here [were] issues of fact as to whether Defendant failed to disclose the 'total cost of the ticket, inclusive of ancillary fees prior to the ticket being selected for purchase, and whether Defendant failed to disclose in 'clear and conspicuous manner the portion of the ticket price stated in dollars that represents a service charge, or any other fee or surcharge to the purchaser.'" *Cammayo v. 1AND8, Inc.*, Index No. 150173/2024, 2025 WL 1713287, at *4

(N.Y. Sup. Ct. Richmond Cnty. June 12, 2025). The case did *not* hold that the doctrine is inapplicable to a NY Ticketing Statute claim as Plaintiff incorrectly implies. Stated simply, Defendant is unaware of any case stating that the NY Ticketing Statute categorically bars a voluntary payment defense. Indeed, the fact the courts in Plaintiff's cited cases denied defendants' motions on the basis of factual disputes concerning the plaintiff's knowledge only further undermines Plaintiff's argument for class-wide resolution here.

Moreover, and just the opposite of Plaintiff's misleading citations, the New York Supreme Court has held that the voluntary payment doctrine *is applicable to NY Ticketing Statute claims*. In the case of *Curanaj v. Tao Group Operating LLC*, the New York Supreme Court granted defendant's motion to dismiss a NY Ticketing Statute claim on the basis of the doctrine. *See* 2024 NY Slip Op. 34638(U), Index No. 56152/2024, at 9, 2024 WL 5456192 (N.Y. Sup. Ct. Westchester Cnty. July 25, 2024) (holding that "plaintiff was well aware of the fee before she completed her purchase"). In fact, in that case, the court rejected the plaintiff's attempt to avoid dismissal by arguing that "this inquiry turns on Plaintiff's knowledge." *Id.* If application of the statute turns on a particular plaintiff's knowledge, which is the case here, that alone renders the case unsuitable for class-wide treatment.

Returning to consideration of the defense here and its effect on class certification, its determination is an issue that can be decided only on an individualized basis—not class wide. In the case of *Dowd v. Alliance Mortgage Co.*, the New York Supreme Court initially certified a class action alleging a violation of General Business Law § 349(a) (which prevents deceptive practices) based on defendant's imposition of a mortgage payoff fee. 74 A.D.3d 867, 869 (2d Dep't 2010). The Second Department then decertified the class for certain claims "based on the voluntary payment doctrine, 'which bars recovery of payments voluntarily made will full knowledge of the

facts,'" concluding that the doctrine "*necessitates individual inquiries of class members*." *Id.* (emphasis added) (quoting *Solomon v. Bell Atl. Corp.*, 9 A.D.3d 49, 55 (1st Dep't 2004)). In *Solomon*, the court similarly refused to certify a class action for alleged internet service fees based on the voluntary payment doctrine, holding that the doctrine "would bar recovery by any subscriber who, having experienced slow service and/or frequent connectivity outages, continued to use defendants' DSL service." 9 A.D.3d at 55.

While it is true that the voluntary payment doctrine does not *always* bar a class action, this is not a case where application of the voluntary payment defense is susceptible to such class wide proof that its application can also be determined on a class wide basis. *E.g.*, *Mazzei v. Money Store*, 288 F.R.D. 45, 69 (S.D.N.Y. 2012) (where defendant raised the voluntary payment doctrine in a footnote, based on "pure speculation," and did not show that any class member might be subject to the defense, and where plaintiff argued that application of the doctrine could be resolved on a class wide basis based on plaintiff's contention that defendant expressly contracted around the voluntary payment doctrine *as to every putative class member's claim*), *rev'd* on other grounds 308 F.R.D. 92 (S.D.N.Y. 2015); *Brice Yingling v. eBay, Inc.*, No. C 09-01733 JW, 2010 WL 11575128, at *4 (N.D. Cal. July 16, 2010) (where defendant's theory in defense rested on its argument that defendant's invoices, which were sent uniformly to all putative class members, informed customers of the final value fee).

Similar to the cases two paragraphs above, Plaintiff's voluntary payment of the "cost of doing business" service fee destroys commonality. Class certification here would require intensive individualized inquiries into every single plaintiff's subjective state of mind to determine whether they voluntarily (like Plaintiff) or mistakenly (unlike Plaintiff) paid the service fee. Continued purchases and payments reflect the conundrum for Plaintiff, as well as any other similarly situated

repeat purchaser. Indeed, Plaintiff even continued to voluntarily pay the service fee by making continued purchases *after* retaining counsel and even after filing her complaint here. *See, e.g.*, *Solomon*, 9 A.D.3d at 55 (stating the voluntary payment doctrine "would bar recovery by any subscriber who, having experienced slow service and/or frequent connectivity outages, continued to use defendants' DSL service"); *Vaccariello v. XM Satellite Radio, Inc.*, 295 F.R.D. 62, 68, 74 (S.D.N.Y. 2013) (identifying the voluntary payment doctrine, "under which any proposed class member who was aware of Defendant's renewal policy cannot recover subscription fees in a GBL § 349 claim," stating that "any class member who knew of XM's automatic renewal policy and continued to pay for their service is barred from recovering their subscription fees. Thus, individual inquiries are necessary to determine which class members knew of XM's policies but, nevertheless continued to renew their services."); *see also Emilio v. Sprint Spectrum L.P.*, No. 11-CV-3041 (JPO), 2017 WL 3208535, at *9 n.6 (S.D.N.Y. July 27, 2017) ("[F]or Emilio, the voluntary payment defense is one that presents a unique challenge to his claim, in contrast to claims of generic putative class members. For example, Emilio considered himself to be a 'loyal' Sprint customer, and his continuing to renew his contract, perhaps even after becoming aware of issues that formed the basis of his legal action, raises particular questions about whether he, as compared to other class members, made payments 'with his eyes open,' such that he may be particularly subject to the voluntary payment defense and may be uniquely 'estopped from maintaining an action to recover that payment.'").

### C. Plaintiff Has Not Demonstrated Typicality

Typicality requires the Plaintiff's claims to have the same "essential characteristics" as those of the rest of the putative class. *Howard v. Cook Cnty. Sherriff's Off.*, 989 F.3d 587, 605 (7th Cir. 2021). The typicality test requires other members of the class to have the same or similar

injury, for the action to be based on conduct which is not unique to the Plaintiff, and for other class members to have been injured by the same conduct. *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014).

As a threshold matter, while Plaintiff argues that the claims arise from the same conduct, she ignores her own testimony that she purchased a ticket on December 2, 2023, *only after filling out and submitting a form to become a plaintiff in a lawsuit against Defendant in November 2023*. While she later claimed, when asked *when* she first spoke about the NY Ticketing Statute with her counsel, that she spoke to her counsel about the NY Ticketing Statute in January 2024, after her purchase, she refused to answer on the basis of privilege *what* she discussed. Just as she refused to answer on the basis of privilege *why* she believed that the ticket-type selection screen is the screen where a ticket is "selected for purchase." Berryman Dep. at 60:4-63:22. That was despite her agreeing that she does not decide to buy a ticket until the seat selection screen. And, to the contrary of her claims and request for class certification, she further agreed that everyone's seat preferences are different, and the discovery of a lack of a subjectively "good' seat may dissuade other consumers from purchasing a ticket. *Id.* at 83:7-18.

Moreover, because she is a repeat customer that knew of the service fee *beforehand* but accepted it as a cost of doing business, and knew even more importantly to look for a possible service fee, she is not typical of the potentially putative class member that was unaware of the service fee when they selected a ticket for purchase (to which she has not shown that any such putative class member even exists). *See Newman v. RCN Telecom Servs., Inc.*, 238 F.R.D. 57, 78 (S.D.N.Y. 2006) ("[The voluntary payment doctrine] would bar recovery by any RCN subscriber who, having experienced slower than advertised service, continued to pay for and use RCN's high speed internet service. . . . [A]fter an extra $25.00 per month charge for premium high speed

internet service appeared on his bill, Newman continued to pay his bills without dispute. Newman is therefore an atypical plaintiff because he is subject to an affirmative defense based on the voluntary payment doctrine that raises individual issues about his own claims."); *see also Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 179-80 (2d Cir. 1990) (class certification properly denied because plaintiff was inappropriate class representative because its claim was subject to several unique defenses, including the fact that it continued to purchase the disputed CDs despite having knowledge of the fraud); *Dillon v. U-A Columbia Cablevision of Westchester, Inc.*, 100 N.Y.2d 525, 526 (N.Y. 2003) (plaintiff's purported class action complaint barred based on voluntary payment doctrine when facts revealed that she paid defendant cable company the challenged extra fee with full knowledge of when and why the fee would be charged).

### D. PLAINTIFF IS AN INADEQUATE CLASS REPRESENTATIVE

Adequacy requires the representative party to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requires the proposed class representative to "have an interest in vigorously pursuing the claims of the class" and to "have no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). Plaintiff does not meet this bar.

When individualized affirmative defenses such as the voluntary payment doctrine raises individual issues, this can defeat class certification through a lack of adequacy of representation. *See Gary Plastic Packaging Corp., v. Merrill Lynch*, 903 F.2d 176, 179-180 (2d Cir. 1990) (holding that Plaintiff was not an appropriate class representative because their claim was subject to unique defenses including continued purchase of CDs through Defendant despite knowledge of and having investigated alleged fraud). Similarly, here Plaintiff cannot adequately represent the

interests of the rest of the proposed class because her claim is subject to individual defenses based on her voluntary payment of the service fee discussed above. This will lead to inconsistent claims and doubts about Plaintiff's abilities to vigorously pursue a consistent class-wide claim.

Additionally, the circumstances around Plaintiff's decision to bring suit call into question her ability to adequately and vigorously represent the interests of the class. Specifically, Plaintiff was aware of the service fee before her first contact with counsel and viewed it as a "cost of doing business." Berryman Dep. at 40:13-22. Additionally, even after filling out counsel's Angelika solicitation form in November of 2023 and after being more cognizant of potential "hidden fees", she yet still purchased more tickets from Defendant in December of 2023. *Id.* at 33:24-6. This type of manufactured suit and Plaintiff's own unique circumstances should defeat adequacy, as she cannot vigorously pursue the claims of the rest of the proposed class.

That she retained counsel *and refused to answer questions central to the case on the basis of privilege* further undermines her adequacy. *See Savino v. Computer Credit*, 164 F.3d 81, 87 (2d Cir. 1998) (stating the court may consider honesty and trustworthiness of named plaintiff, and denying certification where the named plaintiff offered contradictory testimony on matters central to the lawsuit and "would create serious concerns as to his credibility at any trial"); *Cromer Finance Ltd. v. Berger*, 205 F.R.D. 113, 124-125 (S.D.N.Y. 2001) ("Where a plaintiff's testimony on an 'issue critical to' the cause of action was 'subject to sharp attack,' that deficiency has also rendered the plaintiff an inadequate class representative." (quoting *Kline v. Wolf*, 702 F.2d 400, 403 (2d Cir. 1983)); *see also Weaver v. University of Cincinnati*, 970 F.2d 1523, 1528 (6th Cir. 1992) (denying class certification based on named plaintiff's refusal to answer questions on the basis of privilege).

Put simply, Plaintiff's own declaration confirms she is a repeat purchaser, and her deposition testimony confirms prior awareness of service fees and continued purchases despite that awareness. Those facts make her the direct opposite of the absent class member she purports to represent: someone allegedly surprised into paying a hidden fee.

**E. A CLASS ACTION IS NOT SUPERIOR BECAUSE INDIVIDUAL ISSUES PREDOMINATE**

Plaintiff's motion argues that common issues predominate here because Defendant's website flow was uniform. But uniform exposure to a website is a far cry from uniform injury or uniform recoverability. As demonstrated above, there are numerous individualized issues that easily predominate over any purported common questions (of which there are none that are dispositive of any issues in this case). *See Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 99 (S.D.N.Y. 2010) (denying class certification based in part on the predominance of individual issues concerning the application of the voluntary payment doctrine, holding "compounded with these individualized questions is the lingering concern relating to the potential unique defense of voluntary payment, among others"); *see also Smart Professional Photocopy Corp. v. Childers-Sims*, 850 So.2d 1245, 1251-52 (Ala. 2002) (vacating class certification because individual inquiries into each plaintiff's subjective state of mind to determine whether they paid by mistake or voluntarily predominates over common claims). Perhaps the biggest issue is that of repeat customers and their prior knowledge. And, for the same reason, a class action *where only a single named plaintiff has alleged to have been harmed* is not superior to individualized claims for relief.

Indeed, Plaintiff's own experience demonstrates the individualized inquiries that would dominate any class proceeding. Determining whether a customer knew about the fee, had previously paid the fee, accepted the fee as a cost of doing business, continued purchasing despite

the fee, or voluntarily paid the fee cannot be resolved through common proof and instead requires a comprehensive customer-by-customer analysis.

## V. CONCLUSION

Since none of the Rule 23 requirements are met, Plaintiff's Motion for Class Certification should be denied.

DATED this 12th day of August 2026

**GREENBERG TRAURIG, LLP**

By: /s/ *Mark E. Ferrario*
Mark E. Ferrario, Esq. (*Admitted pro hac vice*)
Nevada Bar. No. 1625
Tyler Andrews, Esq. (*Admitted pro hac vice*)
Nevada Bar No. 9499
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002
Email: ferrariom@gtlaw.com
tyler.andrews@gtlaw.com

Ashley A. LeBlanc
One Vanderbilt Avenue
New York, NY 10017
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
Email: leblanca@gtlaw.com

*Attorneys for Reading International, Inc.*

**CERTIFICATION PURSUANT TO LOCAL RULE 7.1(c)**

I hereby certify under penalty of perjury under the laws of the United States that the foregoing Memorandum of Law complies with Local Rule 7.1(c)'s word-count limit because it consists of only 5,940 words, exclusive of the caption, tables, signature blocks, and required certificates.

Dated: Las Vegas, Nevada
August 12, 2026

*/s/ Mark E. Ferrario*
Mark E. Ferrario

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 12, 2026, a copy of the foregoing was filed electronically through the Court's CM/ECF which will, in turn, send a notice of electronic filing to all counsel of record.

*/s/ Mark E. Ferrario*
Mark E. Ferrario