**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HALEY BERRYMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>READING INTERNATIONAL, INC.,<br><br>Defendant. | Civil Action No. 1:24-cv-00750-PAE<br><br>Hon. Paul A. Engelmayer |

# REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Dated: September 11, 2026

**BURSOR & FISHER, P.A.**
Philip L. Fraietta
50 Main Street, Suite 475
White Plains NY 10606
Telephone: 914-874-0708
Facsimile: (914) 206-3656
E-Mail: pfraietta@bursor.com

Alec M. Leslie
1330 Avenue of the Americas, 32nd Floor
New York, NY 100019
Telephone: (646) 837-7126
Facsimile: (212) 989-9163
E-Mail: aleslie@bursor.com

Stefan Bogdanovich
1990 N. California Blvd., 9th Floor
Walnut Creek, CA 94595
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: sbogdanovich@bursor.com

*Attorneys for Plaintiff and the Putative Class*

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................. 4

A. The ACAL does not require any proof of deception. ........................................ 4

B. The Voluntary Payment Doctrine does not require the absence of deception. ...... 7

C. ACAL § 25.07(4) does not ask the Court to read individual consumers' minds, but to decide in one fell swoop whether Reading's "ticket listing" complies with the law. ........................................................................ 8

D. Plaintiff's testimony establishes she is a typical consumer and an adequate representative. ........................................................................................ 9

E. Reading does not dispute that Plaintiff satisfies the requirements for class certification. ........................................................................................ 11

CONCLUSION ......................................................................................................... 12

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Berryman v. Reading Int'l, Inc.*,
763 F. Supp. 3d 596 (S.D.N.Y. 2025)........................................................................ passim

*Bourque v. United States*,
2026 WL 1483487 (N.D. Cal. May 27, 2026) ........................................................................ 8

*Charles v. Color Factory, LLC*,
2024 WL 1693236 (S.D.N.Y. Apr. 19, 2024)........................................................................ 7

*Fortune v. Vivendi Ticketing US, LLC*,
2026 WL 2085544 (S.D.N.Y. July 17, 2026) ........................................................................ 7

*Pires v. The Bowery Presents, LLC*,
44 Misc. 3d 704, 988 N.Y.S.2d 467 (N.Y. Sup. 2014) .............................................................. 5

*Presson v. Alamo Intermediate II Holdings, LLC*,
2025 WL 692123 (S.D.N.Y. Mar. 4, 2025) ........................................................................ 7

*Ramlogan v. Viator, Inc.*,
822 F. Supp. 3d 250 (D. Mass. 2026) ........................................................................ 2, 5, 6

*Ruzhinskaya v. Healthport Techs., LLC*,
311 F.R.D. 87 (S.D.N.Y. 2015) ........................................................................ 10, 11

*Summerville v. Gotham Comedy Found., Inc.*,
765 F. Supp. 3d 293 (S.D.N.Y. 2025)........................................................................ 6, 7, 8

*Vasell v. SeatGeek, Inc.*,
2025 WL 240912 (E.D.N.Y. Jan. 17, 2025) ........................................................................ 7

## STATUTES

N.Y. G.B.L. § 349........................................................................ 5, 6, 7

## OTHER AUTHORITIES

2022 S.B. 9461........................................................................ 6, 8

**INTRODUCTION**

To call the August 12, 2025 brief Reading filed in connection with a Plaintiff's motion to certify her ticket fee class an "OPPOSITION" would be a misnomer. *See* ECF No. 102. Reading's brief does not actually oppose the arguments Plaintiff raises for why class certification is warranted here. Of note, Reading's brief does not dispute that:

- From August 29, 2022 through at least March 27, 2024, every ticket to a theater in New York state sold on its website charged a "service fee" that "was not displayed until after an individual had selected the type and quantity of tickets that he or she wanted to purchase." ECF No. 94-2 (Deposition of John Goeddel ("Goeddel Dep.")) at 35:6–12 and ECF No. 94-3 (Defendant's Response and Supplemental Response to Interrogatory No. 11).

- Reading's own transactional data reflects at least 234,682 online transactions, 440,373 tickets sold, and 137,771 unique customers at the three Angelika Film Center locations in New York during the class period of August 29, 2022 through March 26, 2024. ECF No. 94-5 (RII001777).

- For each of those unique transactions, Reading collected and produced transactional data identifying each online purchase's theater location ("SiteName"), the transaction date and timestamp, the customer's email address, the total transaction value, the total service fee, and the number of tickets. Goeddel Dep. at 51:6–54:4

Under *Plaintiff's* theory of the case, that is sufficient to prove the claim and injury of every one of the 137,771 class members here, ascertain them, make them whole, and satisfy the Rule 23 requirements for class certification. "[A]s alleged, Berryman experienced a concrete economic injury: the payment of a fee made unlawful by Reading's failure to timely disclose it." *Berryman v. Reading Int'l, Inc.*, 763 F. Supp. 3d 596, 605 (S.D.N.Y. 2025) ("*Berryman I*"). The statute at issue here already tells us what a timely disclosure is: the "'disclosure of the total cost and fees shall be displayed in the ticket listing *prior to* the ticket being *selected for* purchase.' Insofar as the Complaint alleges that the ticket selection page, which *precedes* the seat selection page, omits the fee, it plausibly states a claim." *Id*. at 606 (citing ACAL § 25.07(4)) (emphases added by this Court). And the "voluntary payment doctrine 'does not apply when a plaintiff's

claim is predicated on a lack of full disclosure by defendant.' Such is the allegation here: Reading allegedly omitted the service charge until the final stage of the purchasing process." *Id.* at 607 (internal citation omitted).

Unable to oppose certification of an ACAL class under the theory Plaintiff proposed, Reading opposes certification of a strawman claim Plaintiff does not bring here. It argues that not every class member was "injured in the same way" because not everyone "was tricked or ambushed." ECF No. 102 at 5.[1] But the ACAL does not require a plaintiff to prove deception of any kind, and thus Reading's reliance on GBL cases is inapposite. *Ramlogan v. Viator, Inc.*, 822 F. Supp. 3d 250, 254 (D. Mass. 2026) ("the conduct prohibited by GBL 349 …, *i.e.* deceptive trade practices, is distinguishable from that prohibited by ACAL."). Nor does Plaintiff argue class members were injured because they were fooled. She argues everyone was injured because they paid an unlawful fee, *see Berryman I,* 763 F. Supp. 3d at 605, or, as Reading's Chief Information Officer put it, a "junk fee." Goeddel Dep. Tr. at 41:21-42:3.

Reading also argues that there are individualized issues because consumers have "differing views and opinions on" when they decide to buy a ticket. *See* ECF No. 102 at 16. Reading fundamentally misunderstands the statute. The ACAL does not concern when a *consumer subjectively* chooses to buy a ticket. In fact, the text of the ACAL § 25.07(4) never references the consumer at all. Instead, the text asks whether the "*operator*" *objectively* fails to "disclose the total cost of the ticket… *in the ticket listing* prior to the ticket being selected for purchase." ACAL 25.07(4) (emphasis added). The "ticket listing" page where a "ticket is selected for purchase," is objectively the same for every single consumer—a fact Reading does not oppose. In this case, the first "ticket listing" where a "ticket is selected" is on the "TICKET

[1] All citations to page numbers in filings on the docket refer to ECF pagination.

SELECTION" page. The "TICKET SELECTION" page says "*Ticket selections will appear in this box*" after ticket selections are made in the "SELECT YOUR TICKETS" section. *See* FAC ¶ 81, Fig. 16-A (below, circling added). These are Reading's words, not Berryman's.




"Insofar as the [Plaintiff can prove on a classwide basis] that the ticket selection page, which *precedes* the seat selection page, omits the fee, [she] states a claim." *Berryman I*, 763 F. Supp. 3d at 606 (emphasis in original). And here, Reading admits she can. See ECF No. 94-2 (Deposition of John Goeddel ("Goeddel Dep.")) at 35:6–12 and ECF No. 94-3 (Defendant's Response and Supplemental Response to Interrogatory No. 11).

Reading also resorts to misrepresenting Ms. Berryman's deposition testimony to argue she is an atypical and inadequate representative. But viewed in full context, Reading's questioning established nothing more than that Berryman is a typical consumer who occasionally reads the news and goes to the movies. She testified having seen something "in the news, on social media," about New York passing a law on ticket fees *generally*, ECF No. 94-4 (Deposition of Haley Berryman ("Berryman Dep.") at 22:7-9, but did not know what *specific* disclosures the law required. When asked about her state of mind during her seven different purchases to Angelika specifically, "I can't speak to it a hundred percent because it's a couple years ago," but, "if anything, because the law was in effect … I would assume that the website had fallen into compliance." Berryman Dep. Tr. at 52:19-53:16.

At bottom, the ACAL requires neither proof of deception nor a subjective inquiry into when a specific consumer chooses to buy a ticket. The relevant inquiry is whether plaintiff and other class members (1) paid a fee, and (2) whether Reading failed to disclose that fee "in the ticket listing" page "prior to the ticket being selected for purchase." ACAL § 25.07(4). Because the answers to these questions are the same for everyone and can easily be determined by Reading's own records, a class should be certified here.

## ARGUMENT

### A. The ACAL does not require any proof of deception.

Reading argues there is no numerosity, commonality, typicality, or predominance, because "plaintiff has not established any other potential plaintiff [class members] in her purported class that has allegedly been 'tricked' or 'ambushed' by Defendant's service fee." ECF No. 102 at 14. Reading's argument fails because the ACAL, as written and as interpreted by the courts, does not require any proof of deception.

By its plain terms, ACAL § 25.07(4) is a strict liability statute. It says "every operator… of a place of entertainment… shall disclose the total cost of the ticket, inclusive of any ancillary fees… in the ticket listing prior to the ticket being selected for purchase." *Id*. The text of the statute never uses the word "deceive," "trick," or "ambush," or otherwise provide that a plaintiff needs to show they were duped. *See id.* As such, several courts—including this one, *see Berryman I*, 763 F. Supp. 3d at 605-06—have held that a claim under ACAL § 25.07(4) does not require any proof of deception. "Insofar as the Complaint alleges that the ticket selection page, which *precedes* the seat selection page, omits the fee, it plausibly states a claim." *Berryman I*, 763 F. Supp.3d. at 606 (citing ACAL § 25.07(4)) (emphases added by this Court); *accord Ramlogan*, 822 F. Supp. 3d at 254.

Nor does the statute require proof of deception to establish an injury. ACAL § 25.33, which provides a private right of action to enforce violations of section 25.07(4), also never uses any words like "deceive," "trick," or "ambush." And this Court, along with several others, has held a Plaintiff can show "injury [through] the payment of a fee made unlawful by Reading's failure to timely disclose it." *Berryman I*, 763 F. Supp. 3d at 605.

ACAL cases both predating and following *Berryman I* have likewise held that "a statutory violation, for which the law provides a remedy, is an injury sufficient to state a claim under the ACAL." *Ramlogan*, 822 F. Supp. 3d at 255 (citing *Pires v. The Bowery Presents, LLC*, 44 Misc. 3d 704, 709–10, 988 N.Y.S.2d 467, 471 (N.Y. Sup. 2014)). In *Ramlogan*, as here, the court held a plaintiff sufficiently alleged an ACAL § 25.07(4) claim simply because "plaintiff did purchase a ticket with an alleged undisclosed fee. That is sufficient to state a cause of action." *Id*. at 255.

Unable to find a single ACAL § 25.07(4) case supporting its argument, Reading instead cites various N.Y. G.B.L. § 349 cases involving fees where plaintiffs failed to show deception.

ECF No. 102 at 18 and 20. But in those cases, plaintiffs bringing private civil actions necessarily needed to show deception because the GBL's right of action is limited to "any person who has been injured by reason of *any deceptive act* or *deceptive practice* made unlawful by this section." NY GBL § 349(h) (emphasis added). Here, in contrast, the ACAL's private right of action contains no such limitation for deceptive acts.[2] *See* ACAL § 25.33 ("any person who has been injured by reason of a violation of this article may bring an action in his or her own name to enjoin such unlawful act, an action to recover his or her actual damages or fifty dollars, whichever is greater, or both such actions."). As *Ramlogan* summarized, "the conduct prohibited by GBL 349 …, *i.e.* deceptive trade practices, is distinguishable from that prohibited by ACAL." *Ramlogan.*, 822 F. Supp. 3d at 254. Whereas the "GBL 349" covers a "potentially massive scope of behavior," the "ACAL, on the other hand, targets a much narrower and more clearly defined conduct." *Id*. "Given the significant distinction between the scope of the statutes, the Court discounts the comparative caselaw." *Id*.

So too here, Plaintiff neither brings a GBL claim nor claims her and class members' injuries are predicated on them being tricked. As such, there is no basis to graft an unwritten deception requirement to the statute and use it as grounds to deny class certification.

[2] To be sure, the recent amendments to ACAL § 25.07(4) were passed, in part, because "a 2021 legislative investigation" raised concerns that drip pricing tactics like those employed by Reading are "'*potentially* unfair, deceptive, and anti-consumer practices.'" *Summerville v. Gotham Comedy Found., Inc.*, 765 F. Supp. 3d 293, 300–01 (S.D.N.Y. 2025) (quoting New York Sponsors Memorandum, 2022 S.B. 9461) (emphasis added). But the report's use of the word "potentially" makes clear that, in recommending passage of the law, the legislative knew *not* ever consumer would be deceived. That was not the point of the law. The point of the law was to ensure that no consumer would ever be deceived *or otherwise physiologically manipulated* into paying a later disclosed fee. *See, e.g.*, *Charles v. Color Factory, LLC*, Case No. 1:24-cv-00322, ECF No. 21 at 3 (S.D.N.Y. Apr. 5, 2024) (Letter of New York Senator James Skoufis) (drafter and sponsor of the law noting that companies charge these fees "to capitalize on the emotions of consumers buying tickets to their favorite events as quickly as possible.")

**B. The Voluntary Payment Doctrine does not require the absence of deception.**

Reading next seeks to smuggle in a deception requirement by claiming the absence of deception somehow proves its voluntary payment doctrine defense. *See* ECF No. 102 at 14-16. It does not. As this Court held, "the voluntary payment doctrine 'does not apply when a plaintiff's claim is predicated on the lack of full disclosure by defendant.'" *Berryman I*, 763 F. Supp. 3d. at 606 (citation omitted). And here, plaintiff's claim is predicated on defendant "violat[ing] the ACAL's requirements of full disclosure." *Summerville v. Gotham Comedy Found., Inc.*, 765 F. Supp. 3d 293, 301 (S.D.N.Y. 2025). As such, federal courts have uniformly rejected the voluntary payment defense in other ACAL § 25.07(4) cases. *See id.*; *accord Fortune v. Vivendi Ticketing US, LLC*, 2026 WL 2085544, at *5 (S.D.N.Y. July 17, 2026); *Presson v. Alamo Intermediate II Holdings, LLC*, 2025 WL 692123, at *6 (S.D.N.Y. Mar. 4, 2025); *Charles v. Color Factory, LLC*, 2024 WL 1693236, at *3 (S.D.N.Y. Apr. 19, 2024); *Vasell v. SeatGeek, Inc.*, 2025 WL 240912, at *14 (E.D.N.Y. Jan. 17, 2025).

Reading's reliance on the voluntary payment doctrine's application in other GBL § 349 cases is misplaced. In those cases, the plaintiffs' claims were not necessarily "predicated on the lack of full disclosure by defendant" the same way ACAL§ 25.07(4) cases inherently are. *Berryman I*, 763 F. Supp. 3d. at 606. Rather, in those cases, the GBL claims were predicated on defendant committing "unfair, deceptive, or abusive acts or practices in the conduct of any business, trade, or commerce," N.Y. G.B.L. § 349(a). And as noted, the question of whether *Defendant* "violated the ACAL's requirements of full disclosure," *Summerville*, 765 F. Supp. 3d at 301, is a question subject to common proof. Here, Defendant admitted in its supplemental response to Interrogatory No. 11 that the "checkout flow on its website was uniform during the proposed class period and as alleged in Plaintiff's Complaint." ECF No. 94-3. Whether *Defendant* violated the ACAL's requirements of full disclosure is therefore capable of class-

wide resolution. As another court recently noted in certifying a class of consumers who allegedly paid unlawfully-inflated passport fees: "Whether the voluntary payment doctrine applies and bars suit is, again, a merits issue. As Plaintiffs' argument hinges on whether Department's conduct in setting the fees [violated the law], this question can be answered on a class wide basis." *Bourque v. United States*, 2026 WL 1483487, at *7 (N.D. Cal. May 27, 2026). "This argument supports, rather than defeats, predominance." *Id*.

**C. ACAL § 25.07(4) does not ask the Court to read individual consumers' minds, but to decide in one fell swoop whether Reading's "ticket listing" complies with the law.**

Reading argues Plaintiff cannot certify a class because "'[e]veryone's different' regarding their seat selection and ticket purchase decisions." ECF No. 102 at 15. But this is irrelevant. The ACAL § 25.07(4) does not ask whether some consumers "decide to buy a ticket until the seat selection screen" or whether, for others, the" lack of a subjectively 'good' seat may dissuade other consumers from purchasing a ticket." ECF No. 102 at 21. Indeed, the text of ACAL § 25.07(4) *never references the consumer at all*.

Instead, ACAL § 25.07(4) is written from the perspective of the *Defendant*. It says: "Every operator … of a place of entertainment… shall disclose the total cost of the ticket, inclusive of all ancillary fees … Such disclosure of the total cost and fees shall be displayed in the ticket listing prior to the ticket being selected for purchase." *Id*. By referencing the "ticket listing" page where "the ticket [is] being selected," this statutory provision *objectively* refers to design of a website; not the consumer's *subjective* experience using it.

This is a single page on Reading's website, and it is the same page that is presented to every consumer. Where, as here, a website splits up its checkout flow into several different steps, "the service fee, should be disclosed at the earliest stage of a transaction, *i.e*. 'when tickets are first viewed on a website.'" *Summerville*, 765 F. Supp. 3d at 301 (quoting the Senate Report at

30). *See* FAC ¶ 82, FAC 16-A.[3] In other words, by adding extra steps to its checkout flow, an operator simply adds extra places where it needs to comply with the law.




And so "[i]nsofar as the Complaint alleges that the ticket selection page, which *precedes* the seat selection page, omits the fee, it plausibly states a claim." *Berryman I*, 763 F. Supp. 3d at 606.

**D. Plaintiff's testimony establishes she is a typical consumer and an adequate representative.**

Reading lastly argues that Plaintiff is not a typical class member and an inadequate representative because she "is a repeat customer," and bought one of her seven tickets after she had retained counsel to pursue video privacy claims. ECF No. 102 at 21. Neither of those facts matter.

That Plaintiff is a "repeat customer" who happened to visit Defendant's theater seven times during the class period is not a unique defense. *See* ECF No. 94-5 (Defendant's spreadsheet showing seven transactions by Plaintiff during the class period). ECF No. 96 (Declaration of Haley Berryman) at ¶ 4 (confirming the same). New movies are routinely released in theaters, which gives class members like Plaintiff a reason to go again. Indeed, a reasonable moviegoer during the class period might wish to watch *Barbie* one weekend, and *Oppenheimer* the other. *See* FAC ¶¶ 46 and 82, Figs. 4 and 16-A (showing both films were screened in Reading's New York theaters during the class period).

[3] The "MOVIE SELECTION" page contains no ticket prices.

Defendant also argues she is atypical because "she purchased a ticket on December 2, 2023, *only after filling out and submitting a form to become a plaintiff in a lawsuit against Defendant in November 2023*." ECF No. 102 at 21 (emphasis in original). But this is a non-issue. Ms. Berryman testified that back in November 2023, she had retained her counsel for "just the video privacy laws," and that she had not become "aware of the ticket fee claim until months later," "in January of 2024." Berryman Dep. at 98:7-12 and 101:8-16. In other words:

> Q. [W]hen you purchased the December 5, 2023, ticket, that's because you wanted to see the movie; correct?
>
> A. Correct.
>
> Q. And you weren't patrolling websites in search of legal violations?
>
> A. No, I was not.

*Id*. at 101:17-23.

Moreover, even if this December 2023 ticket purchase were subject to unique defenses, it would not impact her five prior ticket purchases on January 3, 2023, April 27, 2023, July 12, 2023, July 13, 2023, September 18, 2023—all of which occurred long before she ever contemplated any lawsuit against Reading. Berryman Decl., ¶ 4.[4]

On this point, this Court's decision in *Ruzhinskaya v. Healthport Techs., LLC*, 311 F.R.D. 87, 99 (S.D.N.Y. 2015) (Engelmayer, J.) is on all fours. There, this Court held a plaintiff satisfied typicality "because Ruzhinskaya's claims and those of the class she seeks to represent arise from the same conduct by HealthPort (charging a uniform, and allegedly cost-unjustified, per-page charge of 75 cents) and because Ruzhinskaya and similarly situated requesters must prove similar facts, and make similar legal arguments, to prevail." In arguing the plaintiff lacked

[4] Plaintiff had an additional purchase on January 24, 2024, also prior to her filing her complaint. Berryman Decl., ¶ 4. Defendant does not appear to argue this later purchase raises any other unique defenses.

typicality, defendant argued she had not been fully overcharged on one of 185 pages of medical records. *Id*. The court rejected this argument. *Id*. "As [plaintiff] points out, she therefore bore 'any overcharge for 184 out of 185 pages of medical records.' That Ruzhinskaya did not bear the cost of the additional page is irrelevant to typicality; at most, it would be relevant to her damages. Ruzhinskaya's claim is still fundamentally typical of the class and the disparity 'does not go to the heart of [her] case.'" *Id*. (internal citations omitted).

The same is true here. That Defendant takes issue with one of Berryman's ticket purchases does not change the fact she paid allegedly unlawful fees on several others.

Reading's attack on Plaintiff's adequacy is also based on the fact that she purchased a ticket in December 2023, after retaining counsel to pursue video privacy claims. ECF No. 102 at 22-24. But again, this December 2023 purchase, at best, concerns Plaintiff's damages.

### E. Reading does not dispute that Plaintiff satisfies the requirements for class certification.

Finally, it bears noting that Reading does not dispute that under *Plaintiff's theory* of the case, this case is readily capable of class-wide resolution. Plaintiff argues the checkout flow she depicted in her complaint, showing Reading failed to disclose its service fee on the Ticket Selection page, both establishes an ACAL violation and defeats any voluntary payment doctrine defense. Reading *does not* dispute that Plaintiff's complaint accurately depicts the checkout flow during the entire class period, and that every class member saw that same checkout flow. ECF No. 94-3. Plaintiff argues that the payment of Reading's allegedly unlawful service fee establishes both a statutory and constitutional injury. Reading *does not* dispute it has transactional data identifying each online purchase, email addresses for the consumers for each of those purchases, and the amounts of tickets and services fees they all paid. ECF No. 94-5.

Defendant's non-opposition of these points underscores why class certification is appropriate.

## CONCLUSION

For these reasons, the Court should grant Plaintiff's motion for class certification.

Dated: September 11, 2026

Respectfully submitted,

By: */s/ Philip L. Fraietta*
Phillip L. Fraietta

**BURSOR & FISHER, P.A.**
Philip L. Fraietta
50 Main Street, Suite 475
White Plains NY 10606
Telephone: 914-874-0708
Facsimile: (914) 206-3656
E-Mail: pfraietta@bursor.com

Alec M. Leslie
1330 Avenue of the Americas, 32nd Floor
New York, NY 100019
Telephone: (646) 837-7126
Facsimile: (212) 989-9163
E-Mail: aleslie@bursor.com

Stefan Bogdanovich
1990 N. California Blvd., 9th Floor
Walnut Creek, CA 94595
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: sbogdanovich@bursor.com

*Attorneys for Plaintiff and the Putative Class*

**CERTIFICATION OF WORD COUNT**

I hereby certify that the word count of this memorandum of law complies with the word limits set by Local Civil Rule 7.1(c) (the "Rule"). According to Microsoft Word, the word-processing system used to prepare this memorandum, the total word count for all printed text that counts towards the limits imposed in the Rule is 3,497.

*/s/ Philip L. Fraietta*